MISSOURI–ILLINOIS RAILROAD COM-
PANY, Appellant,

v.

ORDER OF RAILWAY CONDUCTORS
AND BRAKEMEN et al., Appellees.

MISSOURI–ILLINOIS RAILROAD COM-
PANY, Appellant,

v.

BROTHERHOOD OF RAILROAD
TRAINMEN et al., Appellees.

Nos. 17226, 17227.

United States Court of Appeals
Eighth Circuit.

Oct. 2, 1963.

Rehearing Denied Oct. 30, 1963.

R. W. Yost, St. Louis, Mo., for appellant and M. M. Hennelly, St. Louis, Mo., on the brief.

Robert E. McGlynn, East St. Louis, Ill., for appellees Brotherhood of Railroad Trainmen and others and Dan McGlynn, East St. Louis, Ill., on the brief.

Charles R. Judge, St. Louis, Mo., for appellees Railway Conductors and Brakemen and others and V. C. Shuttleworth and Harry Wilmarth, Cedar Rapids, Iowa, on the brief.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

These appeals come to us as a result of the District Court's dismissal of plaintiff-appellant's complaint to enjoin a threatened strike called by defendant-appellee unions. The parties will hereinafter be referred to as they appeared in the trial court.

The facts in these cases are undisputed and the cases are parallel in every respect. Plaintiff is a common carrier by railroad, carrying interstate and intrastate freight in Missouri and Illinois. Defendants, Order of Railway Conductors and Brakemen (hereafter called ORC&B) and Brotherhood of Railroad Trainmen (hereafter called B of RT), are national labor organizations and collective bargaining representatives of the plaintiff's conductors and brakemen, respectively. The parties are participants in both national and local disputes involving changes in wages, rules and working conditions. As both disputes are kindred, it will be helpful to an understanding of the issue here to briefly refer to the facts of each.

The national dispute: On November 2, 1959, plaintiff and other railroads throughout the United States submitted to the defendants and other collective bargaining organizations extensive proposals for changes in wages, rules and working conditions. Counter-proposals were submitted by the employee organizations. By agreement between management and labor, these proposals were to be negotiated on a national basis between national representatives of the carriers and of the employees. These representatives were in the process of negotiating the proposals when, with the concurrence of all parties, the President of the United States appointed a Presidential Railroad Commission to investigate and report. Hearings were begun in February 1961 and completed the following February. Although the carriers accepted its recommendations, the organizations rejected them, refusing to negotiate further.

The local dispute began in July of 1961, while the national dispute was still in progress. Appellees served Section 6 notices under the Railway Labor Act (45 U.S.C.A. § 156) requesting increases in rates of pay, to be effective August 26, 1961 for brakemen, and August 20, 1961 for conductors, on work assignments paid for on an hourly basis. Plaintiff replied to these notices by requesting a conference for the purpose of discussing these matters. Such conference was held August 18, 1961. No agreement was reached at that time. Plaintiff, at that conference, claimed that the requests of defendant unions were barred by a provision of the 1960 mediation agreement which fixed rates of pay until November 1, 1961. It also urged that under the national moratorium agreement and local bargaining agreement all brakemen and conductor assignments are paid on a mileage rather than on an hourly basis; and therefore, defendants were requesting rates of pay for job assignments which did not exist. Defendants, of course, did not accept plaintiff's interpretation of such agreements.

Immediately following the conference and certain exchanges in correspondence reflecting the above-mentioned views, defendants requested the National Mediation Board to enter the dispute on August 29, 1961. The Mediation Board was

unable to bring about an agreement, and on June 28, 1962, pursuant to Section Five, First, of the Act (45 U.S.C.A. § 155, First), urged the parties to submit their dispute to arbitration. The plaintiff agreed to such arbitration, but the defendants did not. On July 25, 1962, the Board advised both parties that its services were terminated. On August 20, 1962, the ORC&B notified the plaintiff of its intention to strike the following Monday, and a similar notice was sent plaintiff by the B of RT. On August 24, 1962, plaintiff filed these actions, asking the District Court to enjoin the threatened strike. Subsequent thereto, on August 27, 1962, plaintiff submitted to the National Railroad Adjustment Board, pursuant to Section Three, First (i) of the Act (45 U.S.C.A. § 153, First (i)) the following questions, as reflected in appellant's brief:

"(a) Did Article IV of Agreement dated June 4, 1960, known as Mediation Agreement Case A–6081 and Article VI of Agreement dated June 22, 1960, known as Mediation Agreement Case A–6114, prohibit the serving of notice for increase in rates of pay for conductors effective August 20, 1961, and for brakemen effective August 26, 1961?

"(b) Does the Basic Agreement of December 1, 1956, applicable to conductors and the Basic Agreement of August 1, 1956, applicable to brakemen, make provision for conductor and brakemen assignments to be paid on an hourly basis?"

Thereafter, on August 29, 1962, plaintiff amended its complaint to reflect its submission of the dispute to the Adjustment Board and alleged that the defendants were unlawfully attempting to enforce their own interpretation of existing agreements by means of a strike when such dispute had been submitted to the Adjustment Board. The case was heard before the United States District Court for the Eastern District of Missouri, on October 1, 1962.

At that time, plaintiff reiterated its reasons for believing that the unions' demands were improper. It argued, as stated, that the demands were in violation of the moratorium provisions of the national mediation agreement; and that the rates of pay requested were for job assignments that did not exist, as the entire subject of rates of pay for existing jobs was already a matter of present agreement between the parties. Hence, it contended that the dispute involved here was a "minor" one and thereby within the exclusive jurisdiction of the Adjustment Board. The defendants, on the other hand, claimed that the Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.) prohibited the Court from issuing an injunction because the dispute was solely a "major" one over increased rates of pay for "road switchers" pay on an hourly basis and thereby a dispute within the jurisdiction of the Mediation Board alone.

The District Court's Conclusions of Law were as follows:

"1. Plaintiff, having participated in the procedures provided by the Railway Labor Act for major disputes, cannot, by reason of its belated submission to the National Railroad Adjustment Board, now claim this is a minor dispute.

"2. The dispute does not involve a grievance or the interpretation or application of an (existing) agreement concerning rates of pay, rules, or working conditions and is not a minor dispute. (Par. added.)

"3. This action involves a labor dispute as that term is defined in the Norris-LaGuardia Act. It is a major dispute as that term is recognized in the railroad industry, involving requested changes in rates of pay, and, all the mediatory processes of the Railway Labor Act having been completed, this Court is without jurisdiction to issue an injunction herein."

Appellant claims that these conclusions are erroneous as a matter of law.

The distinction between "major" and "minor" disputes under the Railway

Labor Act is classified in Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U. S. 711, 723, 65 S.Ct. 1282, 1290, 89 L. Ed. 1886 (1945) and defined in part as follows:

"The first relates to disputes over the formation of collective agreements or efforts to secure them. * * *

"The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one."

■ Section 2 of the Railway Labor Act (45 U.S.C.A. § 152) requires that both kinds of such disputes be first negotiated by the parties as a step toward settlement of their controversy. When negotiations fail, the procedures diverge. Major disputes "seek to create rather than to enforce contractual rights." (325 U.S. l. c. 724, 65 S.Ct. l. c. 1290.) A "Section 6 Notice" (45 U.S.C.A. § 156), given by the party seeking to change an existing agreement, is a prerequisite to a major dispute. Thereafter, a conference must be held between the parties in an effort to iron out their differences. If this fails, the matter is referred to mediation through the National Mediation Board. (45 U.S.C.A. § 155, First.) If mediation of a major dispute is unsuccessful, the Mediation Board may propose voluntary arbitration to the parties. Neither party is required to accept such arbitration. Finally, the President of the United States may, if he so desires, create an Emergency Board to investigate and report on the dispute. (45 U.S.C.A. § 160.) The parties to a major dispute may not resort to self-help until they have complied with each stage of this process. The status quo, in other words, must be maintained until the Mediation Board has acted upon the dispute. See Burke v. Morphy, 109 F.2d 572 (2 Cir. 1940), cert. den. 310 U.S. 635, 60 S.Ct. 1078, 84 L.Ed. 1404 (1940).

■ Where minor disputes are concerned, if the initial conference between the parties fails, either party may submit the controversy to the National Railroad Adjustment Board. The decision of this Board is final and binding upon the parties. (45 U.S.C.A. § 153(i), (l), (m), (n)). Neither party, where a minor dispute is in issue, may resort to self-help. Thus, a court has the power to enjoin a strike, notwithstanding the Norris-LaGuardia Act, thereby effectuating the Adjustment Board's jurisdiction and its conclusions as to the dispute. Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

With this background, the importance of whether the dispute in the case at bar is a major or minor one is put in focus. If it is ruled that the dispute is a minor one, as appellant would have us do, it necessarily follows that, under the Chicago River case, supra, the threatened strike by the unions should have been enjoined by the District Court. If, on the other hand, it is found that the dispute here is a major one, then no injunction will lie unless as appellant argues, appellees have violated the provisions of the Railway Labor Act. (Cf. Pullman Company v. Order of Railway Conductors and Brakemen, et al. (7 Cir. 1963) 316 F.2d 556.)

At the outset, it must be remembered that:

" * * * here, as in other areas of jurisprudence, the difference, on the one hand, between the interpretation and the application of an existing agreement, and, on the other hand, a change in an original intended basis of agreement is often a question of degree.

"In reaching for resolution of this problem of course we must not place undue emphasis on the contentions or the maneuvers of the parties. Management will assert that its position, whether right or

wrong, is only an interpretation or application of the existing contract. Unions, on the other hand, in their assertions about the dispute at issue, will obviously talk in terms of change." Rutland Railway Corp. v. Brotherhood of Locomotive Engineers, 307 F.2d 21, 33 (2 Cir. 1962).

That the dispute in the case at bar involves a proposed change in rates of pay for the plaintiff's employees engaged in "road-switching" is apparent from appellant's complaint, where it is alleged that the "request for a change (was) in rates of pay related to conductor assignments which are paid on an hourly basis as set out in (the National) Mediation cases * * *." Notwithstanding, appellant would have us rule that although such a request began as a major dispute, it later developed into a minor one as a result of the differences between the parties concerning the interpretation of the 1960 National Mediation Agreement governing the fixing of rates of pay, etc. Thus, it says, as the dispute centers about the "interpretation or application of agreements concerning rates of pay, rules, or working conditions," it is therefore a minor dispute submittable to the Adjustment Board. (45 U.S.C.A. § 153, First (i).

Appellees argue that where a party seeks to "change" the terms of a working agreement, as here, a major dispute is in issue; that appellant is estopped from claiming that this dispute is a minor one since it first acquiesced in submitting the controversy to the Mediation Board and never indicated an intention to submit the issue to the Adjustment Board until after such was filed. Appellees also assert that any question about this dispute being a minor one is moot since the Mediation Agreement of 1960 expired November 1, 1961. We need not discuss appellees' last two contentions since we are convinced that a major dispute is involved in this case.

That a dispute over wage rates, though based on a previously existing agreement between the parties, is the type of dispute Congress intended to leave to non-compulsory arbitration, is made manifest in Elgin, Joliet & Eastern R. Co. v. Burley, supra. Merely because the dispute may be related to a change in an existing agreement that had not yet terminated does not, a fortiori, make the dispute a minor one. In Order of Railroad Telegraphers, et al. v. Chicago & North Western Railway Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774 (1960), in discussing whether a controversy was a "labor dispute" within the language of the Norris-LaGuardia Act, the Court stated: "Plainly the controversy here relates to an effort on the part of the union to change the 'terms' of an existing collective bargaining agreement." (362 U.S. at 336, 80 S.Ct. at 764, 4 L.Ed.2d 774.) And in subsequently rejecting the company's contention that the dispute was a minor one, the Court held:

"* * * it is impossible to classify as a minor dispute this dispute relating to a major change, affecting jobs, in an existing collective bargaining agreement, rather than to mere infractions or interpretations of the provisions of that agreement. Particularly since the collective bargaining agreement which the union sought to change was a result of mediation under the Railway Labor Act, this is the type of major dispute that is not governed by the Adjustment Board." (362 U.S. 341, 80 S.Ct. 767, 4 L.Ed. 2d 774.)

It is not irrelevant to note that the 1960 Moratorium Agreement to which these parties were signatories was a result of mediation under the terms of the Railway Labor Act. And, as in the above-quoted case, the appellees here seek a "change" in their local existing contract to effect a raise in pay. They are not claiming that they are entitled to an increase in rates of pay under the provisions of any contract currently in effect between them.

Finally, appellant's claim that appellees violated the terms of the Act by initiating a second dispute on the same subject matter while the national dispute was still in progress, is without merit. No section of the Railway Labor Act points to a prohibition such as appellant contends exists. Nor, do we feel, can any be implied. Before we should undertake to hold Norris-LaGuardia inapposite to the problem here presented, a much clearer showing of a statutory violation would be required. Chicago, Rock Island & Pacific R. Co. v. Switchmen's Union (2 Cir. 1961), 292 F.2d 61, cert. den. 370 U.S. 936, 82 S.Ct. 1578, 8 L.Ed.2d 806.

As the mediatory processes of the Railway Labor Act have been completed here, and as no showing has been made that appellees have in any way violated the provisions of that Act, the District Court properly concluded that it was without jurisdiction to enjoin the threatened strike. That being so, its judgment is affirmed.