**ST. LOUIS SOUTHWESTERN RAILWAY CO., Plaintiff-Appellee,**

v.

**UNITED TRANSPORTATION UNION (UTU), et al., Defendants-Appellants.**

No. 79–3330.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 29, 1981.

---

Helm, Pletcher, Hogan & Burrow, J. Donald Bowen, Stephen W. Hanks, Houston, Tex., for defendants-appellants.

Tracy Crawford, Mike A. Hatchell, Tyler, Tex., for plaintiff-appellee.

Before BROWN, COLEMAN and GEE, Circuit Judges.

GEE, Circuit Judge:

In 1977, the United Transportation Union ("the union") filed notices pursuant to section 6 of the Railway Labor Act, 45 U.S.C. § 156, requesting changes in its agreements with the St. Louis Southwestern Railway ("the railroad") regarding group disability insurance benefits and caboose design specifications. The parties first negotiated over the union's proposals, initially on their own and then under the auspices of the National Mediation Board, but failed to resolve their differences. The National Mediation Board then requested the parties to submit the matter to arbitration, but the union declined and, in July 1979, following a 30-day cooling-off period, called a strike against the railroad. The railroad, however, immediately obtained a temporary restraining order and subsequently a permanent injunction against the strike on the ground that the disputes between it and the union were "minor" ones under the Railway Labor Act. The union appeals the district court's grant of the injunction on the ground that the caboose specification proposal generated a "major" dispute.[1] We affirm the court below.

The Railway Labor Act specifies two dispute resolution procedures, one for "major" disputes and one for "minor" ones. If the parties initially fail to resolve a "major" dispute, the Act first prescribes mediation under the auspices of the National Mediation Board. If this proceeding is unsuccessful, the Board may then propose that the parties consent to voluntary arbitration. If one party declines arbitration, however, then, unless the President of the United States creates an emergency board to investigate the dispute, either party can resort to self-help, including, for the union, a strike. When, on the other hand, the parties fail to resolve a "minor" dispute between themselves, the Act ordains that either party may submit the controversy to the National Railroad Adjustment Board and that that body's resolution of the controversy is bind-

---

1. The union does not contest the court's decision that the insurance benefits dispute was a "minor" one.

ing; self-help is not permitted.[2] Thus, the propriety of the district court's injunction against the union in this case hinges on whether the union's dispute with the railroad is a "major" or a "minor" one. The union urges upon us two different bases upon which to decide that the dispute is not "minor": (1) application of the appropriate legal standard to the controversy at issue, and (2) reliance on the way the parties themselves apparently viewed the dispute as manifested by their behavior—an estoppel ground. We will examine each in turn.

## I. *Application of the Legal Standard*

The Supreme Court has explained the difference between "major" and "minor" controversies:

The first relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e.g., claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future.

*Elgin, Joliet & Eastern Railway v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89

L.Ed. 1886 (1944). There seems to be no doubt that the union's caboose notice created a "major" dispute in the sense that the proposed changes would materially alter the existing agreement. See *Railroad Trainmen Lodge No. 376 v. Southern Railway,* 393 F.2d 303 (5th Cir. 1968). The court below, however, found that whether, as the railroad asserts, the union's proposal is barred by a "moratorium" provision in a national agreement between the parties that forbids certain types of union proposals is a "minor" dispute and that this dispute must be resolved in favor of the union according to the procedures prescribed by the Railway Labor Act for "minor" disputes before the union can proceed to strike over the railroad's failure to accede to its proposal. Thus, there are two questions: first, is the dispute over whether the caboose proposal is precluded by the moratorium indeed a "minor" dispute; and second, assuming it is, if a union and a railroad have both a major and a minor dispute—or a dispute having both major and minor aspects—resolution of the latter of which may control the former, must the parties exhaust the statutory procedures for the minor controversy before they can resort to self-help for the major one? One, at least, of these questions must be resolved in the negative for the union to prevail.

The second question, however, must surely, in the present context, be answered in the affirmative because a contrary answer would largely defeat the purpose of moratorium provisions. This court's decision in *Flight Engineers' International Association v. American Airlines, Inc.,* 303 F.2d 5 (5th Cir. 1962), also compels such an answer here. In *Flight Engineers'* we decided that a controversy involving claims that some of a union's demands for changes in a contract were covered by non-reopen clauses in the contract constituted a "minor" dispute and that the union could therefore be enjoined from striking over the demands themselves

---

**2.** The two dispute resolution processes are described in, *e.g., Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 724–28, 65 S.Ct. 1282, 1290–1292, 89 L.Ed. 1886 (1944); *REA Express, Inc. v. Brotherhood of Ry., Airline & S.S. Clerks,* 459 F.2d 226, 230 (5th Cir.), *cert. denied,* 409 U.S 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972); *Brotherhood of Locomotive Firemen & Enginemen v. Southern Pac. Co.,* 447 F.2d 1127, 1131–32 (5th Cir. 1971).

until the claims regarding the scope of the non-reopen clauses were resolved.

With regard to the first question, it is clear under existing law that the possible preclusion of the union's caboose proposal by the moratorium provision created a "minor" dispute if the proposal is "arguably" covered by the provision, *REA Express, Inc. v. Brotherhood of Railway, Airline and Steamship Clerks*, 459 F.2d 226, 231 (5th Cir.), *cert. denied*, 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972); *International Brotherhood of Teamsters v. Braniff International Airways, Inc.*, 437 F.2d 1272, 1274 (5th Cir. 1971); *United Industrial Workers of the Seafarers International Union v. Board of Trustees*, 351 F.2d 183 (5th Cir. 1965), or if the question of preclusion is not "fictitious or merely colorable," *St. Louis, San Francisco & Texas Railway v. Railroad Yardmasters of America*, 328 F.2d 749, 753 (5th Cir.), *cert. denied*, 377 U.S. 980, 84 S.Ct. 1886, 12 L.Ed.2d 748 (1964). The moratorium provision expressly bars proposals "for changing any matter contained" in the national agreement or one of its forerunners. Among the "matters" specifically set forth as subject to the moratorium are "interchange service," *i.e.*, the use by one railroad of another's cars; "arbitraries applicable to road and yard employees," *i.e.*, penalties that accrue upon such contingencies as a violation by the railroad of a contract provision affecting such employees; and "the general level of compensation." The railroad contends that the union's proposal for structural changes in cabooses "arguably" falls under each of these three branches of the moratorium. First, it argues that interchanges would be affected because none of the cabooses of other carriers would conform to the specifications insisted upon by the union, and thus the railroad would either have to pay arbitraries[3] every time it used another carrier's cabooses or it would have to forego entirely interchanges of cabooses. The railroad also claims that the caboose proposal would affect arbitraries because neither it nor other carriers have any cabooses that conform to those requested, and thus continued use of either its own or other carriers' present stock of cabooses would subject it to additional arbitraries. Since arbitraries accrue to railroad employees, moreover, the railroad argues that the proposal is designed to affect the level of employee compensation as well. Indeed, there was uncontradicted testimony below that increased compensation was the primary objective behind the union's filing of the caboose notice.

■ The union responds to the railroad's contentions by arguing that, to the contrary, the caboose modifications it seeks would not in fact change any matters covered by the moratorium. The union may well be correct. We find, however, as did the district court, that the railroad's position is an "arguable" one and is not "fictitious or merely colorable." The court was correct, therefore, in concluding that the caboose notice generated a "minor" dispute, over which the union was legally precluded from striking.

## II. *Estoppel*

■ The union also contends that the railroad behaved as if it regarded the dispute as a major one for over two years—until just before it sought temporary restraint against the union's strike—and that the railroad should thus be estopped from claiming in court that the dispute is a minor one. It is clear that the procedures followed by the two parties prior to the railroad's attempt to secure the TRO were precisely those prescribed by the Railway Labor Act for major disputes. We do not think that it follows, however, that the railroad's initial acquiescence in treating the dispute as major precludes it from arguing in court that it is minor. First, although this court has not previously considered such an estoppel argument, the Court of Appeals for the Second Circuit,

---

**3.** There was a dispute at oral argument concerning whether penalties for the railroad's use of substandard cabooses would properly constitute "arbitraries." While the record is not wholly clear in this regard, we find that the railroad's interpretation of the word "arbitraries" to encompass such penalties is, given the record, at least arguable.

and others, have considered these and rejected them. *Delaware & Hudson Railway v. United Transportation Union*, 461 F.2d 671 (2d Cir. 1972); *accord Detroit, Toledo & Ironton Railroad v. Brotherhood of Locomotive Engineers*, 90 L.R.R.M. 2668 (E.D.Mich. 1975), *aff'd*, 535 F.2d 1253 (6th Cir. 1976); *see Brotherhood of Locomotive Firemen & Enginemen v. Chicago & Illinois Midland Railway*, 386 F.2d 229 (7th Cir. 1967). *But see Missouri-Illinois Railroad v. Order of Railway Conductors & Brakemen*, 322 F.2d 793 (8th Cir. 1963) (district court held that railroad's prior treatment of dispute as major estopped it from later asserting dispute to be minor, but court of appeals affirmed on a different ground). Allowing such an argument, moreover, may operate to penalize a party for agreeing to mediate under the auspices of the National Mediation Board rather than insisting upon binding arbitration before the National Railroad Adjustment Board, and there is no apparent justification for such a penalty. The union's invocation of estoppel in this case, furthermore, is a little suspect, since it now apparently concedes that its disability-benefits proposal created a minor dispute despite its prior contention to the contrary.[4] Finally, the union has not shown that it has been harmed by its reliance on the railroad's position. *See Brotherhood of Locomotive Firemen & Enginemen v. Chicago & Illinois Midland Railway*, 386 F.2d 229 (7th Cir. 1967).

Since we therefore cannot accept either of the union's arguments that the district court erred in finding its dispute with the railroad to be a minor one and in thereupon enjoining it from striking, the court's decision granting the injunction is

AFFIRMED.