**ASSOCIATION OF FLIGHT ATTENDANTS, Plaintiff,**

v.

**REPUBLIC AIRLINES, INC., Defendant.**

Civ. No. 4–82–469.

United States District Court,
D. Minnesota,
Fourth Division.

March 26, 1982.

Michael Abram, Peter Herman, Cohen, Weiss & Simon, New York City, Robert V. Atmore, Lindquist & Vennum, Minneapolis, Minn., for plaintiff.

Raymond J. Rasenberger, Zuckert, Scoutt & Rasenberger, Rachel B. Trinder, Washington, D. C., Joseph Ettel, Republic Airlines, Inc., Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION

DIANA E. MURPHY, District Judge.

Plaintiff Association of Flight Attendants (AFA) brings this action against defendant Republic Airlines, Inc. (Republic) under the Railway Labor Act, 45 U.S.C. §§ 151 et seq., for declaratory and injunctive relief. The dispute arises from the parties' negotiations, pursuant to an August 21, 1980 fence agreement, to arrive at a new single collective bargaining agreement between the parties. Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1337, 2201, and 2202.

The matter came on for hearing before the court on March 15, 1982 upon plaintiff's motion for a temporary restraining order. Plaintiff has also moved for a preliminary injunction preventing Republic from changing pay, work rules, or conditions of employment of its flight attendants pending a determination of AFA's pending grievances before the System Board of Adjustment. The defendant moves to dismiss the complaint because it involves a major dispute now beyond the jurisdiction of this court.

At the hearing on the motion for a temporary restraining order, counsel stated that the record was sufficient for the court to determine all motions without further hearing and requested that the court consider all motions as fully submitted. Later that day the court issued a temporary restraining order, to take effect upon the posting of security,[1] preserving the status quo between the parties until the court could rule on the other motions.

The court having considered the arguments of counsel and affidavits and exhibits submitted by the parties, and based on all the files, records, and proceedings herein, now enters this Memorandum Opinion and Order upon the motions for preliminary injunction and to dismiss.

### Background

#### 1. Parties

Defendant Republic is an airline providing air transportation service to over 160 cities in the United States, Mexico, Canada and the Carribean. It is subject to the provisions of the Railway Labor Act under 45 U.S.C. § 181. Republic is the sixth largest domestic air carrier in the United States, employing approximately 14,400 people.

Plaintiff AFA is the collective bargaining agent certified to represent the flight attendants employed by the defendant. One group of approximately 900 flight attendants (Republic West) was represented by AFA in a May 1, 1979 agreement, and another group of approximately 1500 of the remaining Republic flight attendants (Republic East) was represented by AFA in a separate May 1, 1979 agreement. AFA is now representing both groups in an effort to negotiate a unified collective bargaining agreement.

#### 2. Applicable Statutes

The collective bargaining between the parties is governed in part by the provisions of the Railway Labor Act (the Act). The Act provides two different procedures for resolution of disputes between those covered by the Act.

Under § 6 of the Act, a procedure is established for the resolution of so-called

---

1. Plaintiff filed a bond to meet the security requirement on March 17, 1982.

major disputes (i.e. those relating to rates of pay, rule and working conditions). 45 U.S.C. §§ 155, 156. First, the parties exchange notices of changes they intend in rates of pay, rules or working conditions. The parties confer in an attempt to iron out their differences. Failing this, mediation through the National Mediation Board may be invoked. If mediation is unsuccessful, the Board may proffer binding arbitration. Either party may reject arbitration and, once arbitration is rejected, may resort to self help upon expiration of thirty days.

Another procedure applies for the resolution of so-called minor disputes (i.e. those arising from the interpretation of an existing collective bargaining agreement). 45 U.S.C. §§ 153 and 184. If a conference between the parties fails, either party may submit the dispute to a Board of Adjustment. The decision of the Board of Adjustment is final and binding. Neither party may resort to self help over a minor dispute.

### 3. August 21, 1980 Fence Agreement

On October 1, 1980 Republic Airlines acquired Hughes Airwest Airlines. At the time the respective flight attendants for Republic and Hughes Airwest were represented by AFA and each group was employed under terms of different collective bargaining agreements dated May 1, 1979 and set to expire in September, 1981. In advance of the Republic-Hughes Airwest merger, Republic agreed to maintain these existing, separate agreements for the two groups of flight attendants (Republic East and Republic West) in a fence agreement with AFA dated August 21, 1980.

The fence agreement preserved and continued the separate flight attendant collective bargaining agreements except as explicitly modified. It also supplemented the existing agreements, protecting the flight attendants during the merger and providing a framework for achieving a new unified collective bargaining agreement and seniority list for both groups of Republic flight attendants.

A number of specific provisions are of special relevance here. They are:

2. The Company will provide the Flight Attendants of Republic Airlines, Inc. and Hughes Airwest all the standard Labor Protective Provisions normally imposed as a condition to the approval of a merger by the Civil Aeronautics Board, which are incorporated herein by reference, in the event the Board should not impose them as a condition of the merger of Republic Airlines, Inc. and Hughes Airwest. In the event that such Provisions are effective pursuant to the terms of this Agreement, they shall be enforceable in accordance with the provisions of the Federal Arbitration Act. In the event of arbitration concerning those Labor Protective Provisions, the parties shall attempt to mutually agree upon an arbitrator. In the event the parties are unable to agree upon an Arbitrator, the parties shall ask the National Mediation Board to supply a list of seven Neutrals, each of whom shall be a member of the National Academy of Arbitrators. The arbitrator shall be selected from such panel by alternately striking until only one remains, and that person shall serve as arbitrator. The procedures set forth in Section 13(a) of the Labor Protective Provisions shall apply to the conduct of such arbitration.

3. No later than sixty (60) days following final governmental approval of the merger (effective date of the CAB order), Republic Airlines, Inc. and the Association of Flight Attendants shall begin conferences for negotiation of a single agreement for the Flight Attendants of Republic Airlines, Inc. and Hughes Airwest. In the event that a single agreement for the Flight Attendants of Republic Airlines and Hughes Airwest is not concluded at least sixty (60) days prior to September 30, 1981, the parties shall exchange Section 6 notices under the Duration provision of the present collective bargaining agreements in accordance with their terms to accomplish a single agreement.

4. During the term of this Letter of Agreement, the Republic Airlines Flight Attendants shall operate under the Republic Airlines Flight Attendants' collec-

tive bargaining agreement and System Seniority list. Except as explicitly modified herein, all terms and conditions of the respective Flight Attendants' agreements shall continue in full force and effect.

. . . .

7. Republic Airlines, Inc. shall accept and implement the integrated Flight Attendants' System Seniority list as presented by the Association of Flight Attendants.

. . . .

10. Employee grievances will be processed in accordance with the respective Collective Bargaining Agreements.

11. This Agreement shall remain in full force and effect until a single collective bargaining agreement has been concluded covering the rates of pay, rules and working conditions for the combined Flight Attendant group and the Republic Flight Attendants' System Seniority List and the Hughes Airwest Flight Attendants' System Seniority List have been integrated, except that paragraph 2 of this Agreement shall remain in full force and effect in accordance with the terms of the Labor Protective Provisions, whether accepted as contractual obligations or imposed by the Civil Aeronautics Board.

### 4. Implementation of the Fence Agreement

After the Republic merger, the parties began the process of implementing the fence agreement. The development of an integrated seniority list was committed to the internal procedures of the AFA. It is presently in union arbitration, and is expected to be decided soon by the arbitrator. Negotiations for a unified contract began in late 1980 and have continued off and on until the present time without success.

Initial negotiations for a unified contract stalemated and negotiations broke off in early 1981. In July, 1981, AFA notified Republic:

in accordance with Section 32 (Duration) of the Agreement between . . . Hughes Airwest and the flight attendants . . . in effect until September 30, 1981, and in accordance with Section 31 (Duration) of the Agreement between Republic Airlines, Inc. and the flight attendants . . . in effect until September 30, 1981, that the flight attendants of Republic West Airlines and Republic Airlines . . . wish to make changes in the rates of pay, rules, and working conditions of these Agreements in accordance with Section 6, Title I, of the Railway Labor Act, as amended.

On July 29, 1981 Republic responded with its § 6 notice. Negotiations followed but were fruitless. On August 21, 1981, AFA requested mediation. Mediation began in January, 1982.

The January mediation took place in the context of expectations that Republic would request major labor concessions from its employees. During the summer of 1981 Republic began to experience serious financial difficulties; by the end of 1981 it had suffered a net loss for the year of $46.3 million. In an effort to weather this financial difficulty, Republic gained temporary concessions from many of its employees. On January 27, 1982, Republic proposed a specific series of concessions in its mediation with AFA for a unified contract. At about this time in January, 1982, AFA claims to have first learned that Republic planned to resort to self help if the § 6 negotiations were unsuccessful. After Republic proposed these concessions, mediation broke off briefly.

Mediation resumed on February 9, 1982, and AFA orally proposed the parties enter a new fact-finding and arbitration procedure. Republic rejected this proposal, and on February 10, 1982, the mediator declared an impasse. On February 11 the mediator proffered arbitration. The next day Republic rejected the offer. The National Mediation Board, in a letter dated February 12, 1982, advised the parties that "all practical methods provided in the Railway Labor Act for our adjusting the dispute have been exhausted, without effecting a settlement" and that, under the Act, the parties had to maintain the status quo for thirty days.

During the thirty day period the parties continued to negotiate without success. On March 1, AFA again proposed an arbitration procedure, this time in writing, citing Section 2 of the fence agreement. For the first time, AFA took the position that the fence agreement required preservation of the status quo until conclusion of a merged agreement and an integrated seniority list. Simultaneously, AFA asked Republic to agree to an expedited System Board of Adjustment proceeding to determine, before March 15, whether Republic's plans to engage in self help were consistent with the duration provisions of the fence agreement.

On March 4, 1982, Republic rejected the request for arbitration, taking the position that § 2 of the fence agreement did not provide for arbitration of contract and merger issues. Republic also stated that the fence agreement adopted the procedures of the Act so that the parties could change employment terms on March 15 at the end of the thirty day cooling-off period. Finally, Republic declined to participate in an expedited System Board proceeding on the ground that the union's grievance was anticipatory and the Board had no jurisdiction to render declaratory decisions.

On March 5, 1982, AFA submitted its grievance to the System Board and informed Republic that it would seek an order in federal court to maintain the status quo.

### 5. Republic's Planned Self Help

Republic seeks to save $65 million this year from employee contract concessions. It projects that flight attendant concessions alone would produce cost savings of $1.4 million per month. These concessions need to be implemented soon to realize savings in mid-April when it anticipates a severe cash flow problem and the prospect of being unable to pay debts that come due then.

Republic proposes to implement a 10% pay reduction and one month pay deferral for the Republic West flight attendants. (Republic East flight attendants have accepted these concessions on a temporary basis.) Initial work rule changes include raising the monthly maximum hours from 75 to 80. Reductions in crew complements are proposed to bring crew sizes closer to the minimum legal requirement of one attendant for every 50 seats.

The work rule changes, unlike the wage concessions, would not take effect immediately, but would be implemented over a period of time due to advance scheduling and bidding requirements. Other work rule changes may be made later. Republic's goal is to eliminate 500 flight attendant positions as a result of productivity improvements from its planned work rule changes. At least half of the positions to be eliminated would be accomplished through voluntary employee action. The remainder, at least 126, would be eliminated through furlough notices to the most recently hired attendants. Republic's intention is to use the integrated seniority list produced by AFA if received in a reasonable time. In no event, however, would changes be made in the seniority status of any flight attendant for at least two months.

### Discussion

#### 1. Defendant's Motion to Dismiss

Republic contends that this court has no jurisdiction because the dispute is major and the court may not issue an injunction under 29 U.S.C. § 101 once major dispute procedures have been exhausted. It is conceded that the court has jurisdiction in a minor dispute.

The distinction between major and minor disputes is that minor disputes are those "growing out of grievances or out of interpretation or application of agreements concerning rates of pay, rules or working conditions . . .," 45 U.S.C. §§ 153 First (i) and 184, while major disputes involve attempts to change the "rates of pay, rules, or working conditions . . ." 45 U.S.C. § 156. *United ed Transportation Union v. Burlington Northern, Inc.*, 458 F.2d 354, 356 (8th Cir. 1972).

The dispute between the parties relative to the terms of a new contract is not before the court; rather, issues have been raised concerning the provisions of the fence agreement and their effect on the status of

negotiations for a new contract. These issues have been submitted to the System Board of Adjustment, and AFA seeks to invoke this court's jurisdiction over them. The mere presence of an ongoing major dispute does not preclude the possible coincidence of a minor dispute. *See e.g., St. Louis Southwestern Railway Co. v. United Transportation Union*, 646 F.2d 230 (5th Cir. 1981).

The test for a minor dispute is whether the contract is reasonably susceptible to the interpretations advanced by the parties. *Independent Federation of Flight Attendants v. Trans World Airlines*, 655 F.2d 155 (8th Cir. 1981).[2] If AFA's position on the duration provision of the fence agreement is "arguably" justified by the terms of the agreement and its interpretation is not "obviously insubstantial", the controversy is a minor dispute. 655 F.2d at 159. The burden to show such an arguable justification is "relatively light". *Id.*

Republic claims that the fence agreement clearly incorporates the duration provisions of the separate May 1, 1979 collective bargaining agreement for Republic and Hughes Airwest flight attendants. It cites § 3 which provides in part:

> In the event that a single agreement for the Flight Attendants of Republic Airlines and Hughes Airwest is not concluded at least sixty (60) days prior to September 30, 1981, the court shall exchange Section 6 notices under the Duration provision of the present collective bargaining agreements in accordance with their terms to accomplish a single agreement.

AFA claims, however, that this reference to use of Railway Labor Act § 6 procedures for negotiations does not necessarily mean that the parties are free to resort to self help thirty days after arbitration is rejected. It contends that the duration provisions of the fence agreement are in §§ 4 and 11, which provide in part:

> 4. . . . Except as explicitly modified herein, all terms and conditions of the respective Flight Attendants' agreements shall continue in full force and effect.
>
> . . . .
>
> 11. This agreement shall remain in full force and effect until a single collective bargaining agreement has been concluded covering the rates of pay, rules and working conditions for the combined Flight Attendant group and the Republic Flight Attendants' System Seniority List and the Hughes Airwest Flight Attendants' System Seniority List have been integrated, . . . .

It is evident that both parties' interpretations are "arguably" based on terms of the fence agreement. Moreover, examination of the entire agreement shows that §§ 3, 4 and 11 are not so easily reconciled as to render the position based on one provision or another "obviously insubstantial". Which interpretation is correct is for the System Board to decide, not the court, and the court should take care not to encroach on the Board's jurisdiction. *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co.*, 363 U.S. 528, 533, 80 S.Ct. 1326, 1329, 4 L.Ed.2d 1435 (1960). The fact that the parties present an arguable dispute under the terms of the fence agreement is enough to recognize a minor dispute.[3]

---

2. Republic argues that *Missouri-Illinois Railroad Company v. Order of Railway Conductors*, 332 F.2d 793 (8th Cir. 1963), is controlling here. In that case the union argued that the dispute concerned the interpretation of a prior National Mediation Agreement, but the court found the union was trying to change the terms of the agreement itself. The court's result does not appear inconsistent with the standard applied in the more recent Eighth Circuit cases. *See also United Transportation Union v. Burlington Northern, Inc.*, 458 F.2d 354 (8th Cir. 1972). Although the Eighth Circuit has not been presented recently with a case in which the

parties arguably are involved both in ongoing major and minor disputes, the Fifth Circuit has used a similar standard in this type of situation to determine whether the one dispute was minor. *See St. Louis Southwestern Railway Co. v. United Transportation Union*, 646 F.2d 230 (5th Cir. 1981).

3. Plaintiff's grievance to the System Board raises other issues of the fence agreement. Given the court's conclusion here, however, it is unnecessary to consider whether these also present arguable interpretations.

Republic has also argued that the court should apply estoppel and refuse to recognize AFA's assertion of a minor dispute since AFA has submitted to major dispute procedures, recognized Republic's right to self help, and waited too long to press its minor dispute.

The facts in this case do not support application of estoppel. The mere fact that AFA submitted to major dispute procedures does not preclude its argument in court that a dispute is minor. *St. Louis Southwestern Railway Co. v. United Transportation Union*, 646 F.2d 230 (5th Cir. 1981). The factual record is conflicting as to whether AFA's representatives ever recognized Republic's right to self help. While there is some evidence to support this, the court is unable to draw any fair conclusions on the present state of the record. Finally, although AFA was not prompt in expressing its interpretation of the duration provisions of the contract, it does not appear that its delay harmed Republic. When AFA made its position known and requested Republic join in expedited proceedings to obtain a decision before March 15, Republic declined that opportunity to avoid costly delay. The reason given by Republic for refusing an expedited procedure was that AFA's claim of breach of the duration provisions was anticipatory. Had AFA expressed itself earlier, Republic would have had the same ground for objecting. Both parties bear a responsibility for the time predicament they now find themselves in which each seeks to invoke in its favor.

Since AFA's position on the duration of the fence agreement is at least arguably supported by the agreement and there is no ground for estoppel, the court finds that AFA's grievance presents a minor dispute for consideration by the System Board of Adjustment. Republic's motion to dismiss on the ground that AFA raises a major dispute will therefore be denied.

*2. Plaintiff's Motion for a Preliminary Injunction*

A motion for preliminary injunction may only be granted if the *Dataphase* test is met. *Dataphase Systems, Inc. v. C L Systems Inc.*, 640 F.2d 109 (8th Cir. 1981). The factors to be considered are:

(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Id.* at 113. In the particular circumstances of this case the factor of probability of success on the merits is of little assistance. The relief sought in this action is essentially only a preliminary injunction, and it would be inappropriate for the court to discuss the plaintiff's probability of success with its grievance since that would infringe on the System Board's jurisdiction. Moreover, "(a)t base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.*

AFA claims that Republic's plans for self help will cause irreparable harm to its members. The pay reductions and deferrals, however, are obviously compensable in damages should AFA ultimately prevail at the System Board.[4] Similarly, the proposed increase in hours and workload is largely compensable in damages. While the loss of personal time or the added stress from these changes may not be entirely compensable, the impact should be minimized by the fact that these changes would not be effective immediately, and an expedited System Board decision could limit their impact.

The most serious prospect of irreparable harm for AFA is that which may result from Republic's planned work force reductions. Republic plans to issue furlough notices to between 126 and 250 flight attend-

---

**4.** These changes would only adversely affect the Republic West flight attendants immediately since the larger group of Republic East flight

attendants voluntarily accepted temporary pay cuts and deferrals.

ants. Even if AFA prevailed at the System Board, monetary compensation could be inadequate for the disruption caused to any wrongly noticed for furlough.

Plaintiff also argues that it would be irreparably harmed if it were forced to accept a new contract on Republic's terms, thereby mooting its System Board grievance. It is difficult to assess the extent of this potential harm. The court cannot know what difference there might be between Republic's self help plan and any negotiated contract, given Republic's real financial constraints. Moreover, it seems unlikely on the record before the court that AFA would accept a contract on Republic's terms before its grievance was decided, and improvident action by Republic would be ill advised where it runs the risk of the union responding with its own self help at a time of financial trouble. Republic stated at the hearing that it would not fire attendants without cause or implement individual terms of employment, but would provide terms for all consisting of its most recent contract offer.

Republic, on the other hand, urges vigorously that it faces irreparable harm if an injunction were granted because it would create serious financial difficulties for the airline. AFA does not dispute Republic's claims of financial crisis. Republic faces a certain cash shortage in mid-April and has no additional credit available. The magnitude of its projected operating deficit is great enough to require substantial labor concessions or face serious cuts in levels of service, if not a termination of operations. Many of the proposed concessions require time to implement and so must be initiated now to raise the cash needed to meet its obligations or at least convince creditors that payment is imminent.

The uncertainty produced by issuing an injunction at this time could trigger a crisis of confidence in Republic's ability to cope with its financial troubles. It would be unrealistic to think that Republic faces imminent reorganization, but it is clear that an injunction at this time could contribute to a complex of factors that would eventually hamper Republic's ability to help itself.

AFA argues that its membership is only a small part of Republic's payroll. Nonetheless, the planned changes for the flight attendants alone would generate a monthly savings of $1.4 million. Moreover, Republic's plans for cost savings depends upon its other employees too. No one group of employees may be considered in isolation since action by one group may affect that of others. Thus, the financial impact of an injunction for the flight attendants could be far reaching.

The last factor for consideration is the public interest. Clearly the public has a stake in both sides of this dispute. On balance, however, the public interest militates against the issuance of an injunction. While the odds of financial collapse are not high, the stakes certainly are. The prospect of losing the sixth largest domestic air carrier, at a time when many other air carriers are on the brink of collapse, will only work to the long term disadvantage of the public. As fewer airlines survive the harsh effects of the present economy and deregulation, the public is assured of less service and competition.

The public would also incur a cost unique to the loss of Republic. Republic is the only air carrier service to many smaller communities, particularly in the Midwest. In Minnesota Republic is a major employer and contributor to the economy. The loss of jobs, service, competition and business would be of considerable harm to the public.

This, more than most lawsuits, presents an unhappy choice. Both parties may legitimately claim the threat of irreparable harm. In weighing that harm, however, the greatest threat of harm would occur to the public and Republic if the court issued a preliminary injunction. Further, it is clear that the members of AFA would also be harmed if Republic were to go out of business. Therefore, plaintiff's motion for a preliminary injunction must be denied.

Plaintiff's motion papers, however, also request such other relief as the court deems just. Much of the threatened harm to the plaintiff could be avoided if the parties

submit to an expedited proceeding before the System Board. Fairness requires that Republic cooperate in plaintiff's attempt to receive an expedited decision.

The court has reviewed the complaint in light of its decision here and finds that it has resolved all the issues raised by this suit. At the hearing plaintiff's counsel indicated that the essence of plaintiff's complaint was for preliminary injunctive relief. Therefore, this action will be dismissed, but the court will retain jurisdiction for thirty days to reopen upon the showing of good cause.