AIR LINE PILOTS ASSOCIATION INTERNATIONAL, Plaintiff,

v.

TEXAS INTERNATIONAL AIRLINES, INC., Defendant.

ASSOCIATION OF FLIGHT ATTENDANTS, Plaintiff,

v.

TEXAS INTERNATIONAL AIRLINES, INC., Defendant.

Civ. A. Nos. H–81–2200, H–82–363.

United States District Court, S.D. Texas, Houston Division.

April 21, 1983.

Michael E. Abram, Atty. in Charge, Cohen, Weiss & Simon, New York City, Bruce Fickman, Local Counsel, Chris Dixie & Associates, Houston, Tex., for plaintiffs.

L. Chapman Smith, Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SEALS, District Judge.

This is an action for injunctive and declaratory relief brought pursuant to the Railway Labor Act (RLA), 45 U.S.C. § 151–188 (1976), and the Declaratory Judgment Act, 28 U.S.C. § 2201 (1976). Presently pending before the Court are the parties' cross-motions for summary judgment and defendant's motion to defer adjudication of plaintiff's motion for summary judgment until resolution of the status of New York Air (NYA) and its pilots as indispensible parties. Plaintiffs, the Air Line Pilots Association (ALPA) and the Association of Flight Attendants [1], seek a declaration of their right to arbitrate their respective grievances, and an injunction compelling defendant Texas International Airlines (TI) to proceed with arbitration before the System Board of Adjustment.

Plaintiff ALPA is the certified bargaining representative for the pilots employed by defendant TI. In June of 1980, TI underwent a corporate reorganization by which TI shareholders exchanged their stock for stock in a newly formed holding company, Texas Air Corporation (TAC). TAC now owns all of the outstanding shares of TI. Later in 1980, TAC organized

---

**1.** On March 4, 1982, the Court ordered the action brought by the Air Line Pilots Association against Texas International Airlines (H–81–2200) to be consolidated with an action brought by the Association of Flight Attendants, (H–82–363) pursuant to Rule 42(a), Fed.R.Civ.P., and Rule 15(E), S.D.Tex. The claims asserted in both actions by the respective unions involve paral-
lel allegations of the defendant's refusal to arbitrate identical grievances before the System Board of Adjustment regarding the alleged violation of provisions in their collective bargaining agreements. The Court's holdings with respect to the ALPA are all meant to include the Association of Flight Attendants (AFA) except where explicitly distinguished.

a new airline, New York Air (NYA), which began its operations in December, 1980, flying routes in the northeastern United States. TAC currently owns sixty-seven percent of the NYA stock, the remainder being publicly held. The NYA pilots are currently unrepresented by any labor organization.

In October 1980, the ALPA brought an action against TI, TAC, and NYA, in the United States District Court for the Eastern District of New York, *Air Line Pilots Association v. Texas International Airlines*, 502 F.Supp. 423 (S.D.N.Y.1980), complaining of various substantive violations of the RLA, and seeking injunctive relief and damages. Judge Nickerson found that the complaint raised a "representation dispute" under § 2, Ninth, of the RLA, 45 U.S.C. § 152, Ninth, and dismissed the action for lack of subject matter jurisdiction. The dismissal was affirmed by the Second Circuit in *Air Line Pilots Association v. Texas International Airlines*, 656 F.2d 16 (2d Cir. 1981).

In the New York action, the ALPA contended that TI had substantively violated the RLA: (1) by failing in its duty to maintain the collective bargaining agreement, § 2, First; (2) by unilaterally changing rates of pay, rules, and working conditions, § 2, Seventh, § 6; (3) by interfering, coercing, or influencing employees in the organization and designation of a representative, § 2, Third and Fourth; and (4) by failing to "treat with" the ALPA as the exclusive representative of TI's pilots, § 2, Ninth. The ALPA contended in essence that TI and NYA should be treated as a single carrier, due to TI's incestuous relationship with its sister company NYA. "The complaint requested an order requiring [TI] to deal exclusively with ALPA, to cease hiring New York Air pilots except in accordance with the ALPA agreement, to cease operating New York Air except in accordance with the ALPA agreement, and to cease its efforts to nullify the collective bargaining relationship with ALPA." *ALPA v. TI,* 656

F.2d at 18. Further, the ALPA maintained that the controversy before the New York court had raised a "major" dispute under the RLA. The ALPA, however, had chosen not to invoke the various administrative dispute resolution mechanisms available under the RLA, but instead sought direct judicial intervention "to prevent what it perceived as an illegal attempt by [TI] to circumvent its collective bargaining obligations." *ALPA v. TI,* 656 F.2d at 20. The Second Circuit thus refused to decide whether the controversy raised a "major" or "minor" dispute under the RLA, and held that judicial intervention was improper at that time. *ALPA v. TI,* 656 F.2d at 20 n. 6.

After analyzing the framework and history of the RLA, the court reasoned that although the case did not present a traditional representation dispute—there was no rival union or pending application for National Mediation Board (NMB) certification—sole jurisdiction rested with the NMB as a representation dispute was present. Two factors were key in the court's analysis: (1) that intervention by the court would necessitate a determination whether the ALPA was the proper representative of the NYA pilots, a function reserved exclusively to the NMB, and (2) that the NMB was empowered to, and had shown itself able to, decide representation disputes arising out of corporate restructurings. Thus, the circuit court affirmed the order of the district court dismissing the action for lack of subject matter jurisdiction.

The present action was brought in August of 1981, and unlike the New York proceeding failed to name TAC and NYA as party defendants. The ALPA maintains that unlike the New York proceeding, this action raises a "minor" dispute under the RLA, as it involves a controversy growing out of a grievance or out of the interpretation or application of the terms of an existing collective bargaining agreement.

On November 4, 1980, the ALPA submitted a pilots' group grievance,[2] request-

---

**2.** The grievance stated the following:

A. Has the Company violated the pilot collective bargain agreement by its conduct with

ing an investigation and hearing regarding alleged violations of the pilots' collective bargaining agreement, specifically complaining of TI's refusal to apply the existing agreement to the NYA operation. The ALPA further alleges that on November 18, 1980, TI refused to conduct an investigation and hearing regarding this grievance. On December 11, 1980, the grievance was submitted to the System Board of Adjustment. And, on January 26, 1981, TI informed the ALPA that it would not participate in arbitration before the System Board regarding the grievance.

Section 19(A) of the collective bargaining agreement between TI and the ALPA provides for a System Board of Adjustment to adjust grievances and resolve disputes arising under the terms of the agreement. The particular provision in issue is section 24(E) of the agreement which provides as follows: "The provisions of this Agreement shall be binding up any successor or merged company or companies of any successor in the control of the Company, unless and until changed in accordance with the provisions of the Railway Labor Act."

■ The broad purposes underlying the RLA are to encourage collective bargaining by railroads and airlines and their employees in order to avoid disruptive commerce-crippling strikes, *Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks*, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930), and to secure self-adjustment between the well-balanced powers of carriers and unions. *Elgin, J. & E. Railway Co. v. Burley*, 325 U.S. 711, 752–53, 65 S.Ct. 1282, 1303, 89 L.Ed. 1886 (Frankfurter, J., dissenting); *Ruby v. American Airlines Inc.*, 323 F.2d 248, 256 (2d Cir.1963) (Friendly, J.). To this end, the Act established an elaborate machinery for negotiations, mediation, and arbitration, to handle disputes between carriers and their employees. The specific procedures to be followed depend upon the classification of the dis-

pute in issue. Further, the question of jurisdiction of the federal courts, and the concomitant nature of available judicial relief, turn on the proper classification of the dispute.

■ Although courts usually speak in terms of the existence of two primary types of disputes under the RLA, more properly, disputes fall within three broad categories. *See Summit Airlines v. Local No. 295, International Brotherhood of Teamsters*, 628 F.2d 787, 790–91 (2d Cir.1980). "Major disputes" are disputes arising "over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of [an existing] one...." *Elgin, J. & E. Railway Co.*, 325 U.S. at 723, 65 S.Ct. at 1289. "Minor disputes" are defined as those "in which no effort is made to bring about a formal change in terms or create a new [agreement]. The dispute either relates to the meaning or proper application of a particular provision with reference to a specific situation." *Id.* A representation or jurisdictional dispute involves the proper determination of who shall have the right to represent a given class or craft of employees for purposes of the Act, by virtue of their majority status. *See Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

■ If the dispute is "minor," the parties must first seek to resolve it through negotiation and prescribed grievance procedures; failing resolution it then may be submitted by either party to binding arbitration before an adjustment board, which has exclusive jurisdiction to resolve grievances and determine questions of interpretation or application of existing collective bargaining agreements. *Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co.*, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co.*, 353 U.S. 30, 77 S.Ct. 635, 1

respect to New York Air, including, but not limited to the failure and refusal of the Company to apply the pilot agreement in all respects to such flying?

B. What are the appropriate remedies, for the Company's violations of the agreement? The grievance filed by the AFA on December 17, 1980, was couched in identical terms.

L.Ed.2d 622 (1957). Board decisions are final and binding upon the parties. 45 U.S.C. § 153 First (m); *Elgin, J. & E. Railway Co.*, 325 U.S. at 727, 65 S.Ct. at 1291. "Major" disputes are subject to mediation by the NMB, voluntary arbitration, conciliation attempts by the President, and finally upon failure to resolve a controversy, the parties may resort to self-help. *Elgin, J. & E. Railway Co.*, 325 U.S. at 725, 65 S.Ct. at 1290. *See Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 378, 89 S.Ct. 1109, 1115, 22 L.Ed.2d 344 (1969). Representation or jurisdictional disputes are committed to the exclusive jurisdiction of the NMB, *General Committee of Adjustment, Etc. v. Missouri-K.-T. Railroad Co.*, 320 U.S. 323, 336, 64 S.Ct. 146, 152, 88 L.Ed. 76 (1943); *Switchmen's Union*, 320 U.S. at 303, 64 S.Ct. at 98, which has sole authority to investigate, conduct elections, and certify the proper representative of the given craft or class. *See General Committee of Adjustment, Etc.*, 320 U.S. at 330, 64 S.Ct. at 149; *Switchmen's Union*, 320 U.S. at 301, 64 S.Ct. at 97.

██ Other than the enforcement of decisions and awards of the administrative agencies, *Switchmen's Union*, 320 U.S. at 305, 64 S.Ct. at 99; *Virginian Railway Co. v. System Federation No. 40, Railway Employees*, 300 U.S. 515, 562, 57 S.Ct. 592, 606, 81 L.Ed. 789 (1937), and the narrow scope of review of administrative action, *see Switchmen's Union*, 320 U.S. at 303–306, 64 S.Ct. at 98–99, the judicial function is extremely circumscribed in the ongoing machinery of the Act. *Id.* As discussed above, controversies involving the determination of the proper representative of a craft or class are committed to the primary and exclusive jurisdiction of the NMB. Similarly, the resolution of minor disputes is committed to the primary and exclusive jurisdiction of the adjustment boards. *Brotherhood of Locomotive Engineers*, 373 U.S. at 36–39, 83 S.Ct. at 1061–1062. *See e.g. Ruby v. TACA International Airlines, S.A.*, 439 F.2d 1359 (5th Cir.1971); *International Association of Machinists v. Eastern Airlines, Inc.*, 320 F.2d 451 (5th Cir.1963). *Cf. Order of Railway Conductors v. Pitney*, 326 U.S. 561, 66

S.Ct. 322, 90 L.Ed. 318 (1946). The courts may not interfere during the pendency of a minor dispute; the parties remain free to institute unilateral changes conforming to their interpretation of the agreement pending a determination by the adjustment board. *Brotherhood of Locomotive Firemen & Enginemen v. Southern Pacific Co.*, 447 F.2d 1127 (5th Cir.1971); *Ruby*, 439 F.2d at 1362. The courts, however, may issue injunctions to preserve the integrity of the grievance and arbitration process and the jurisdiction of the adjustment boards. *International Association of Machinists v. Central Airlines*, 372 U.S. 682, 690, 83 S.Ct. 956, 961, 10 L.Ed.2d 67 (1963); *Aaxico Airlines, Inc. v. Air Line Pilots Association*, 331 F.2d 433 (5th Cir.), *cert. denied*, 379 U.S. 933, 85 S.Ct. 333, 13 L.Ed.2d 344 (1964), *rehearing denied*, 379 U.S. 985, 85 S.Ct. 645, 13 L.Ed.2d 578 (1965); *Ashley, Drew & Northern Railway Co. v. United Transportation Union*, 625 F.2d 1357 (8th Cir.1980); *Flight Engineers International Association v. Eastern Airlines, Inc.*, 359 F.2d 303 (2d Cir.1966); *International Association of Machinists v. Northwest Airlines, Inc.*, 304 F.2d 206 (8th Cir.1962). *See Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969); *District 146, International Association of Machinists and Aerospace Workers v. Frontier Airlines, Inc.*, 664 F.2d 538 (5th Cir.1981). The courts have a broader role during the pendency of a major dispute, and may enjoin unilateral activity to preserve the status quo while the dispute is working its way through the various stages provided under the Act. *Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union*, 396 U.S. 142, 148–49 & n. 14, 90 S.Ct. 294, 298 & n. 14, 24 L.Ed.2d 325 (1969); *Jacksonville Terminal Co.*, 394 U.S. at 378–79, 89 S.Ct. at 1115.

██ Various tests have been applied by the courts as an aid in determining the existence of a minor dispute. The dispute is minor if the matter is arguably covered by the contract provision and is not merely fictitious or colorable, *St. Louis Southwestern Railway Co. v. United Transportation*

*Union,* 646 F.2d 230 (5th Cir.1981); *Ruby v. TACA, International Airlines, S.A.,* 439 F.2d 1359, 1362 (5th Cir.1971), or where the terms of the collective agreement, or by reasonable implication therefrom, provide some arguable basis for the action taken. *REA Express, Inc. v. Brotherhood of Railway, Airline, & Steamship Clerks,* 459 F.2d 226, 231 (5th Cir.), *cert. denied,* 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972). Other courts have characterized the test in somewhat different terms: whether the claim that the contract permits the disputed action is not obviously insubstantial, *Airline Stewards Association v. Caribbean Atlantic Airlines, Inc.,* 412 F.2d 289, 291 (1st Cir. 1969); *Southern Railway Co. v. Brotherhood of Locomotive Firemen & Enginemen,* 127 U.S.App.D.C. 371, 384 F.2d 323, 327 (D.C.Cir.1967); whether the contract is reasonably susceptible to the interpretation sought by both the carrier and the union, *United Transportation Union v. Burlington Northern, Inc.,* 458 F.2d 354, 357 (8th Cir. 1972); whether the change being imposed by one side or the other is either contemplated by or arguably covered by the agreement, *Switchmen's Union v. Southern Pacific Co.,* 398 F.2d 443, 447 (9th Cir.1968); and whether the asserted contractual claim is frivolous. *United Transportation Union General Committee of Adjustment v. Baker,* 499 F.2d 727 (7th Cir.), *cert. denied,* 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1974). Whatever test is employed, the Court is of the opinion that the ALPA has made the requisite showing of the existence of a minor dispute. Further, the fact that the ALPA originally characterized the dispute before the New York court as major is in itself of no consequence.[3] *Cf. St. Louis Southwestern Railway Co. v. United Transportation Union,* 646 F.2d 230 (5th Cir.1981).

The ALPA's grievance clearly falls within the broad grievance arbitration provision of the parties' collective bargaining agreement. The thrust of the ALPA's grievance is that when TI established TAC, a wholly owned subsidiary, the agreement was binding on TAC as a successor in the control of

TI, pursuant to section 24(E) of the collective agreement. In June of 1980, the shareholders of TI approved a corporate reorganization in which TAC in effect became the parent corporation and TI the wholly owned subsidiary. Thus, the argument continues that TAC initially as successor under the control of TI was bound by the successorship provision of the collective agreement, and, therefore, any corporate entity within its (TAC's) control (NYA) was also bound by the agreement.

The Court, of course, cannot pass on the merits of this contention, but may only query whether the provision in question provides some arguable basis for the asserted claim, and that it is not merely fictitious or colorable. *St. Louis Southwestern Railway Co.,* 646 F.2d at 233; *REA Express, Inc.,* 459 F.2d at 230–31. The Court holds that the ALPA has sustained its burden and that this question of the application or interpretation of an existing collective bargaining agreement is committed to the exclusive jurisdiction of the System Board of Adjustment.

TI asserts several grounds in support of its motion for summary judgment. The Court will address each of these issues *seriatim.*

## RES JUDICATA AND COLLATERAL ESTOPPEL

■ TI raises the affirmative defenses of res judicata and collateral estoppel as a bar to the present action. The doctrine of res judicata or claim preclusion provides generally that, "if a previous judgment is valid, final, and on the merits, it is an absolute bar in another case on the same cause of action between the same parties and their privies 'not only in respect of every matter which was actually offered and received to sustain the demand or to make out a defense, but also as to every ground of recovery or defense which might have been presented.'" *Acree v. Air Line Pilots Association,* 390 F.2d 199, 203 (5th Cir.), *cert. denied,* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d

---

**3.** See footnotes 5 and 6, *infra.*

122 (1968), *quoting, Mendez v. Bowie,* 118 F.2d 435, 440 (1st Cir.), *cert. denied,* 314 U.S. 639, 62 S.Ct. 76, 86 L.Ed. 513 (1941). *See generally* 1B J. Moore, Moore's Federal Practice ¶¶ 0.405[1]–[3] (2d ed. 1976). Two components of the doctrine of res judicata bear discussion in the present situation. The first area of relevant inquiry is whether the present action presents the same claim or cause of action as that asserted before the court in the Eastern District of New York. The statutory and contractual legal theories and claims for relief presented here are distinguishable. However, this does not in itself compel the conclusion that the present action is based upon a different cause of action for purposes of res judicata.

The contemporary approach used to determine whether the same claim or cause of action has been asserted focuses on a transactional mode of analysis to define the scope of the prior litigation for its preclusive effect. Under this approach, the preclusive effect of the first judgment may encompass "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24 (1981); 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4407 at 55. *See also Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201–02 & n. 7 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982).

The transactional approach has been articulated in different formulas, the most common of which limit the claim or cause of action to the violation of a single right by a single wrong. This circuit has embraced this approach by defining the cause of action in terms of the violation of "but one right by a single legal wrong" or identity of "the primary right and the duty and the delict or wrong. . . ." *Kemp v. Birmingham News Co.,* 608 F.2d 1049, 1052 (5th Cir.1979); *Hayes v. Solomon,* 597 F.2d 958, 983 (5th Cir.), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1979); *Dore v. Kleppe,* 522 F.2d 1369, 1374 (5th Cir.

1975). Other considerations have been used in adopting formulas to comport with this mode of transactional analysis. *See Buck Creek Industries, Inc. v. Alcon Construction, Inc.,* 631 F.2d 75, 78 (5th Cir.1980); *Stevenson v. International Paper Co.,* 516 F.2d 103, 109 (5th Cir.1975). The Fifth Circuit has employed most of these formulas while cautioning that no *per se* rule is completely satisfactory. *Kilgoar v. Colbert County Board of Education,* 578 F.2d 1033, 1035 (5th Cir.1978). It appears fairly clear that a mere change in legal theory, *Carr v. United States,* 507 F.2d 191, 193 (5th Cir.), *cert. denied,* 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975); 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4407 at 63, or an attempt to substitute new remedies, Restatement (Second) of Judgments § 25 (1981); 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4408 at 65, generally will not prevent preclusion of a claim growing out of the same transaction or conduct of which the plaintiff complains. *See Kilgoar,* 578 F.2d at 1035; 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: §§ 4407–08 at 62–65.

Employing this broad transactional approach to define the cause of action for purposes of res judicata leads to the conclusion that there is an identity of claims or causes of action between the claim asserted in the Eastern District of New York and the claim asserted in this Court. Although the ALPA is claiming a violation of a different provision of the RLA, and is claiming a breach of a specific provision of the collective agreement rather than an abrogation or attempted change of the agreement, the broad nature of the conduct complained of—failure to abide by the provisions of the TI/ALPA agreement with respect to the NYA operation—is the same. Whether contractual versus statutory claims are asserted, *Norman Tobacco & Candy Co. v. Gillette Safety Razor Co.,* 295 F.2d 362 (5th Cir.1961), or where claims arise under separate statutory schemes, *Harrington v. Vandalia-Butler Board of Education,* 649 F.2d 434 (6th Cir.1981). *See*

*Nilsen v. City of Moss Point,* 674 F.2d 379, 384 n. 6 (5th Cir.1982), claim preclusion will generally apply, where the conduct complained of grows out of the same operative facts.[4]

 The effective invocation of the doctrine of res judicata also requires that the decision in the prior proceeding was a final judgment on the merits. Rule 41(b), Fed.R. Civ.P., provides that a dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits. Although it is well-settled that a dismissal for lack of subject matter jurisdiction does not preclude a second action on the same claim, as it is not a final judgment on the merits, 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4435 at 339, it does have limited preclusive implications. A jurisdictional decision is conclusive as to matters actually litigated, but does not, in the traditional res judicata sense, bar all matters which could have been litigated. *Equitable Trust Co. v. Commodity Futures Trading Commission,* 669 F.2d 269 (5th Cir.1982); *Acree v. Air Line Pilots Association,* 390 F.2d 199 (5th Cir.), *cert. denied,* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968); 1B

J. Moore, Moore's Federal Practice § 405[5] (2d ed. 1976). Sometimes referred to as direct estoppel by judgment, the prior judgment permits a second action on the same claim, but precludes relitigation of the same issues of jurisdiction that resulted in the first dismissal. *See Acree,* 390 F.2d at 203; 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4436 at 338–340. Thus, it more accurately resembles issue preclusion (collateral estoppel) than true claim preclusion (res judicata). Issue preclusion results in a direct estoppel against a subsequent effort to assert the same basis for jurisdiction for the same claim. *Boone v. Kurtz,* 617 F.2d 435, 436 (5th Cir.1980).

Such is not the case here. The Second Circuit's decision in *ALPA v. TI,* like *Acree,* merely affirmed the judgment of the district court granting TI's motion to dismiss for lack of subject matter jurisdiction. Were the ALPA merely raising the same issues—in effect attempting to have this Court exercise jurisdiction where the New York court had refused—its claim would be barred. The present action by the ALPA, however, raises jurisdictional[5] and substan-

---

**4.** Special care, however, must be taken in such situations, even where the separate actions arise under a single statutory scheme. Particularly, where events continue or change, *see Dore v. Kleppe,* 522 F.2d 1369 (5th Cir.1975), or where the statutory scheme contemplates the separate litigation of claims relating to a single course of conduct, *see Board of Education of City School District of New York v. Hufstedler,* 641 F.2d 68 (2d Cir.1981); 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4411 at 86, 90, or where the matters can only be advanced before separate tribunals. *International Association of Machinists v. Nix,* 512 F.2d 125, 131 (5th Cir.1975); 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4412 at 94.

**5.** Further, even if the prior decision had resulted in a final judgment on the merits, the present action still would not be precluded, as the present claim would appear to have been premature at the time of the prior litigation. The ALPA filed its action in the United States District Court for the Eastern District of New York on October 29, 1980. Judge Nickerson rendered his decision on December 1, 1980. The ALPA submitted its group grievance to TI by letter dated November 4, 1980. The vice

president of flight operations informed the ALPA by letter dated November 18, 1980, that TI would not act on the grievance. On December 11, 1980, the ALPA submitted its grievance to the System Board. And, on January 26, 1981, TI refused to participate in System Board proceedings. Thus, the grievance machinery was set in motion prior to the decision rendered by Judge Nickerson, but TI had not refused to participate in System Board proceedings until after the court's decision. It is therefore unlikely that the present matter could have been properly raised before that court. And, preclusion is inappropriate as to matters that could not have been asserted in the prior action. 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4212 at 93–94 and § 4415 at 122.

The ALPA could not have raised the substantive grievance either in the prior proceeding, or for that matter in this Court, as such issues are relegated to the exclusive jurisdiction of the System Board. Plaintiff's present claim would thus not be cognizable until TI refused to participate in System Board proceedings. Matters that can be advanced only before an administrative agency do not form part of a single claim with matters that can only be advanced before another court or agency. *See Interna-*

tive [6] issues, that were neither presented to, nor decided by the court in the New York litigation. Thus, the Court holds that the ALPA's present claim is not barred by either the doctrine of res judicata or collateral estoppel.[7]

### NYA AND ITS PILOTS AS INDISPENSIBLE PARTIES

 TI maintains that the Court should grant its motion for summary judgment as the ALPA has failed to join NYA and its pilots; that NYA and its pilots are indispensible parties under Rule 19(b), and that the ALPA's failure to join them mandates dismissal of this action. Under Rule 19(a), Fed.R.Civ.P.:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

If such person or persons or entities described in Rule 19(a) meet the requisite criteria of subsection 19(a)(1) or 19(a)(2)(i) or 19(a)(2)(ii), and cannot be joined, they are indispensible parties under Rule 19(b), Fed.

R.Civ.P., and the court must decide, in equity and good conscience, whether the action should proceed in their absence or be dismissed. This decision is to be based on a number of factors enumerated in Rule 19(b). Clause (1) of subsection (a) speaks to the desirability of joining those persons in whose absence the court would be granting partial or hollow relief, rather than complete relief, to the parties already before the court. Fed.R.Civ.P. 19(a) advisory committee note. The relief requested by the ALPA does not seek a judicial interpretation or ruling as to the applicability of the provision in question. It is well-settled that the Court has no such power and the ALPA does not seek such a substantive determination. Rather, the relief requested is a declaration of the ALPA's right to arbitrate this minor dispute before the System Board of Adjustment, and an order compelling TI to participate before the Board. In view of this fact, complete relief can be accorded among those already parties to this action. Further, the Court could not compel NYA to participate in System Board proceedings without deciding as a threshold matter the substantive question whether NYA is bound by the terms of the TI/ALPA agreement.

Regarding subsection (a)(2), although NYA and its pilots may indeed have an interest relating to the substantive issues to be decided by the System Board, the Court is of the opinion that procedures available under the RLA will provide an adequate opportunity for them to be heard and to assert those interests before the Board,

---

*tional Association of Machinists v. Nix*, 512 F.2d 125, 131 (5th Cir.1975); 18 Wright, Miller & Cooper, Federal Practice and Procedure, Civil: § 4412 at 94.

**6.** It should also be noted that the Second Circuit explicitly refused to decide the substantive issue of whether the controversy presented a *major or minor dispute under the RLA. ALPA v. TI*, 656 F.2d at 20 n. 6.

**7.** Unlike the ALPA, the AFA group grievance was not initiated until December 17, 1980, after Judge Nickerson had rendered his decision. TI allegedly refused to investigate and conduct a hearing regarding the grievance. On Septem-

ber 28, 1981, the AFA submitted the grievance to the System Board. And, on December 24, 1981, TI informed the AFA that it would not participate in System Board proceeding regarding the grievance. The AFA was not a party to the New York litigation, and the Court finds no preclusive effect resulted with the regard to the AFA's present claims, either on the basis of res judicata or collateral estoppel. Even with the general demise of the doctrine of mutuality for purposes of collateral estoppel, one who is not a party or privy in the prior proceeding cannot be estopped in a subsequent action. *See Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892 (1942) (Traynor, J.).

thereby avoiding any prejudice that might result in their absence.

In 1936 Congress extended the provisions of the RLA to cover the emerging air transportation industry, 45 U.S.C. §§ 181–188 (1976). The amendments sought to extend the same benefits and obligations to air carriers and their employees that already applied to the railroad industry. The amendments made all the provisions of the RLA applicable to the airline industry with the exception of section 3 of the Act, 45 U.S.C. § 153, dealing with the National Railroad Adjustment Board. *International Association of Machinists, AFL–CIO v. Central Airlines, Inc.,* 372 U.S. 682, 686, 83 S.Ct. 956, 959, 10 L.Ed.2d 67 (1963), *rehearing denied,* 373 U.S. 947, 83 S.Ct. 1533, 10 L.Ed.2d 702 (1963). In its stead, Congress provided in section 205, 45 U.S.C. § 185, that a National Air Transportation Adjustment Board would be created when in the judgment of the NMB such a permanent national board of adjustment would become necessary. Until such time, section 204, 45 U.S.C. § 184, required the formation of system, group, or regional boards of adjustment. This section made the establishment of these adjustment boards compulsory, until such time as the NMB decided to establish a National Air Transportation Adjustment Board. "The obligation which § 204 fastened upon the carriers and their employees cannot be read in isolation. Its true significance must be drawn from its context as part of the Railway Labor Act...." *Central Airlines, Inc.,* 372 U.S. at 687, 83 S.Ct. at 959.

> [T]he provisions of a § 204 contract, such as those governing the composition of the adjustment board, *the procedures to be employed as to notice and hearing or for breaking deadlocks or the finality to be accorded board awards, are to be judged against the Act and its purposes and enforced or invalidated in a fashion consistent with the statutory scheme.*

*Id.* at 695 & n. 18, 83 S.Ct. at 963 & n. 18 (emphasis added) (including in footnote 18, among others, the case of *International Union, United Automobile Aircraft and Agricultural Implement Workers v. Delta Airlines,* 83 F.Supp. 63 (N.D.Ga.1949), construing § 204 of the RLA, 45 U.S.C. § 184, as making applicable to air carriers and their employees the provisions of § 3 of the RLA, 45 U.S.C. § 153). Thus, the substantive and procedural provisions of § 3, 45 U.S.C. § 153, apply with equal force to § 204, 45 U.S.C. § 184, proceedings. *See generally Central Airlines, Inc.,* 372 U.S. at 695 and n. 18, 83 S.Ct. at 963 and n. 18. *See Fong v. American Airlines, Inc.,* 431 F.Supp. 1340 (N.D.Cal.1977); *Northwest Airlines, Inc. v. Air Line Pilots Association, International,* 385 F.Supp. 634 (D.D.C.1974), *rev'd on other grounds,* 530 F.2d 1048 (D.C.Cir.), *cert. denied,* 426 U.S. 942, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976); *Rossi v. Trans World Airlines,* 350 F.Supp. 1263 (C.D.Cal.), *aff'd,* 507 F.2d 404 (9th Cir.1974); *Bates v. Northwest Airlines, Inc.,* 171 F.Supp. 273 (D.Minn.1959); *International Union, U.A.A.A.I.W. v. Delta Airlines,* 83 F.Supp. 63 (N.D.Ga.1949). *Cf. International Association of Machinists and Aerospace Workers v. Frontier Airlines, Inc.,* 664 F.2d 538, 540 n. 2 & 6 (5th Cir. 1981).

Section 3, First (j), of the RLA, 45 U.S.C. § 153, First (j), provides that in proceedings before the National Railroad Adjustment Board, an employee or employees and the carrier or carriers involved in any dispute submitted to the Board are entitled to notice and the right to be heard before the Board. This procedural right has been held applicable to special board proceedings in the railroad industry as well. *Brotherhood of Railway, Airline, and Steamship Clerks v. St. Louis Southwestern Railway Co.,* 676 F.2d 132 (5th Cir.1982); *O'Neal v. Public Law Board No. 550,* 581 F.2d 692 (9th Cir. 1978); *Cole v. Erie Lackawanna Railway Co.,* 541 F.2d 528 (6th Cir.), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977); *Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Railway Co.,* 229 F.2d 59 (8th Cir.1956) (holding an award of the National Railroad Adjustment Board unenforceable for failure to give notice and a hearing to an "involved party"). This section has been specifically held by the Fifth Circuit to require "notice [and the

right to appear] to any party likely to be harmed or substantially affected by the results of the hearing." *St. Louis Southwestern Railway Co.,* 676 F.2d at 135. Further, where third party interests are involved, the fact that the creating agreement fails to provide for notice to such interested third parties does not absolve the Board of its responsibility. *Central of Georgia Railway Co. v. United Transportation Union,* 353 F.Supp. 293 (S.D.Ga.1973). By virtue of the above analysis, the same right to notice and a hearing applies to System Board proceedings under § 204, 45 U.S.C. § 184. Thus NYA and its pilots will not be prejudiced by their failure to be joined in *this* action.

### INTERFERENCE WITH THE PENDING NMB PROCEEDINGS

 Finally, defendant, citing *Ruby v. American Airlines,* 323 F.2d 248, 257 (2d Cir.1963), claims that to submit this issue of contract interpretation to the Adjustment Board, would be tantamount to seeking orders from the court that would frustrate the ultimate determination of the representation issue now pending before the NMB. In *Ruby,* the ALPA had sought an order by the district court compelling the carrier to bargain with it, a previously designated carrier, in the face of an ongoing representation dispute pending before the NMB between the ALPA and a rival union. Here, the relief sought by the union is quite different. The union is not seeking to substantively involve the court in the ongoing controversy. It is clear, and the union agrees, that the Court lacks such jurisdiction. The ALPA merely seeks an order, and quite properly so, *Aaxico Airlines, Inc.,* 331 F.2d at 437, to require the carrier to participate in arbitration proceedings before the Adjustment Board. The threat of judicial obstruction in an area exclusively reserved for agency determination is not present here.

Further, there is strong evidence supporting the view that the Adjustment Board is the proper forum for the determination of a minor dispute that coexists with a representation dispute, or where the resolution of the representation dispute depends on the application or interpretation of an existing collective bargaining agreement. *See Order of Railway Conductors v. Pitney,* 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946); *Slocum v. Delaware Lackawanna & Western Railroad Co.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); *Division No. 14, Order of Railroad Telegraphers v. Leighty,* 298 F.2d 17, 20 n. 5 (4th Cir.1962). *Hearings on H.R. 7180 Before the House Comm. on Interstate and Foreign Commerce,* 69th Cong., 1st Sess. 70–71 (1926). *Cf. Brotherhood of Locomotive Firemen and Enginemen v. Southern Pacific Co.,* 447 F.2d 1127 (5th Cir.1971); *International Association of Machinists and Aerospace Workers v. Northeast Airlines, Inc.,* 536 F.2d 975 (1st Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 328 (1976); *Flight Engineers International Association, EAL Chapter v. Eastern Airlines, Inc.,* 359 F.2d 303 (2d Cir. 1966); *Heisler v. Parsons,* 312 F.2d 172 (7th Cir.1962).

For the reasons stated above, and in view of the fact that there is no genuine issue as to any material fact, the Court hereby ORDERS:

(1) that defendant's motion to defer adjudication of plaintiff's motion for summary judgment until resolution of the status of NYA and its pilots as indispensible parties is DENIED;

(2) that defendant's motion for summary judgment is DENIED;

(3) that plaintiff's motion for summary judgment is GRANTED; and

(4) the defendant shall forthwith proceed to arbitration before the System Board of Adjustment with the ALPA in case # DAL 61–80, and with the AFA in case # 62–67–1–025–80.

The Clerk shall file this Memorandum and Order and furnish counsel for all parties with a true copy.