[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 4, 2003
THOMAS K. KAHN
CLERK

No. 02-15185

D. C. Docket No. 01-07728 CV-WPD

DONALD STEWARD,
DAVID SCHRINER, et al.,

Plaintiffs-Appellees-
Cross-Appellants,

versus

WILLIAM MANN,
WAYNE DALLAND, et al.,

Defendants-Appellants-
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(December 4, 2003)**

Before WILSON and COX, Circuit Judges, and GEORGE[*], District Judge.

_____

[*]Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

COX, Circuit Judge:

## I.  INTRODUCTION

A group of five pilots, William Mann, Wayne Dalland, Edward Marino, James Weir, Gary Shepard, and Charles Musick (the "Mann-Dalland Pilots"), which prevailed in a grievance arbitration, appeal summary judgment against them and in favor of a different group of pilots, Donald Steward, David Schriner, George Dickman, Donny Griffin, William Atwater, Richard Dunn, and David McKennan (the "Steward-McKennan Pilots"), which sued to have the court set aside the arbitrator's award.  For the reasons stated below, we affirm the judgment of the district court setting aside the award and remanding the grievance to the AirTran Airways Pilots' System Board of Adjustment ("Board").

## II.  BACKGROUND AND PROCEDURAL HISTORY

In 1990, a group which included the Steward-McKennan and Mann-Dalland Pilots joined together to start their own airline, Destination Sun Airways.  In September, 1991, they entered into an agreement that ranked them for seniority purposes, using the dates on which they purchased Destination Sun stock to fix their ranking.  By the terms of the agreement, the ranking would continue in effect should Destination Sun become another airline.

In 1993, Destination Sun and another airline, Conquest Airlines, joined together to form a new airline, Conquest Sun Airlines. It is disputed whether Conquest Sun ever honored the Destination Sun seniority agreement.

In 1994, AirTran Airways, Inc. purchased Conquest Sun. Rather than simply hiring all of Conquest Sun's pilots, AirTran interviewed all of the pilots and hired only some. AirTran held its first pilot training class in July 1994. The former Conquest Sun pilots who attended this first training class are the Steward-McKennan Pilots. AirTran held its second training class in August 1994, which the Mann-Dalland Pilots attended. AirTran fixed its pilots' seniority rankings by the date on which the pilots began training. Thus, the Steward-McKennan Pilots were ranked above the Mann-Dalland Pilots for AirTran seniority purposes.

In 1997, AirTran's pilots formed a union, the AirTran Pilots' Association ("ATPA" or "the Association"). All the pilots involved in this case were members of the ATPA. In April 1998, AirTran and the ATPA entered into a collective bargaining agreement ("CBA"). The CBA contained provisions governing the integration of two airlines should AirTran merge with another airline, provisions governing seniority rankings, and provisions governing how AirTran and the ATPA would resolve employee grievances. The grievance provisions provide several steps for resolution of disputes. The first two involve discussions between AirTran and the

3

employee, whether or not represented by the union, and call for AirTran's Vice President of Flight Operations to render a decision on the grievance. The CBA then provides:

3.     If the decision of the Vice President-Flight Operations or his designee is not satisfactory, the President of the Association, or his designee, may within seven (7) calendar days after the receipt of the decision, appeal the grievance in writing to the AirTran Airways Pilots' System Board of Adjustment. The Pilots' System Board of Adjustment will consist of two (2) members appointed by the Association and two (2) members appointed by the Company. Both parties will provide each other the names of the System Board members.

4.     A majority vote of all members of the System Board of Adjustment will be competent to make a decision and decisions at the Board in all cases properly referable to it will be final and binding upon the parties hereto.

5.     In the event of a deadlock in rendering a decision on any case before the Board, the Company and Association will, within ten (10) working days, select a mutually agreeable arbitrator to sit as a neutral member of the Board to make the decision. The arbitrator will render his decision within sixty (60) calendar days of final testimony.

(R.2-52 at Ex. 9 at 12-2.)

Shortly after the CBA took effect, the Mann-Dalland Pilots filed a grievance under the CBA seeking to have AirTran recognize and follow the Destination Sun seniority ranking, pursuant to the CBA's merger protection provisions. The parties

4

were unable to settle the grievance in the first two steps, and the Mann-Dalland Pilots apparently found the Vice President of Flight Operations's decision unsatisfactory.

Just after the Mann-Dalland grievance was filed, AirTran merged with ValuJet Airlines, and the new company kept the name AirTran. ValuJet's pilots had recently become members of the National Pilots' Association ("NPA"). After the merger, ATPA pilots also became members of the NPA, and the NPA and AirTran entered a collective bargaining agreement identical to the AirTran-ATPA CBA. An AirTran pilot, Warzocha, sued AirTran and the NPA in a separate case regarding the integration of the seniority rankings of AirTran and ValuJet pilots. The parties to Warzocha's suit agreed to settle the suit with binding arbitration. In the settlement agreement, they agreed that:

> The Seniority Integration Arbitration does not include arbitration of any grievance currently pending by any former Airways flight deck crew member relating to Destination Sun. Those grievances will be arbitrated in separate proceedings, if necessary, and any decision rendered in a Destination Sun arbitration hearing which affects seniority will be implemented subsequent to the Seniority Integration Arbitration.

(R.1-35 at Ex. 2, ¶10.)

After Warzocha's seniority integration arbitration was complete, the Mann-Dalland Pilots contacted the NPA to begin resolution of their grievance. The Mann-Dalland Pilots refused to follow the grievance-resolution process outlined in the

5

CBA, insisting that the settlement agreement in Warzocha's case entitled them to forego the contractual procedure and proceed instead before a single arbitrator. The NPA initially insisted that the grievance be processed according to the CBA, but eventually took the position that, as the Mann-Dalland Pilots were represented by their own counsel, the NPA would not oppose foregoing the contractual procedure, if AirTran consented to it. AirTran apparently consented, and the grievance was scheduled to be heard by a single arbitrator.

The parties agree that the arbitrator did not send notice of the arbitration to the Steward-McKennan Pilots, who stood to lose some of their seniority by the arbitration. Beyond this, the facts are in some dispute as to the notice the Steward-McKennan Pilots actually received of the arbitration hearing. The parties agree that two of the Steward-McKennan Pilots actually attended the arbitration hearing. One was Donny Griffin, whom AirTran called as a witness at the hearing. The other was David McKennan, a non-practicing attorney as well as a pilot. The undisputed evidence shows that McKennan learned of the hearing by a chance meeting with the NPA's grievance chairman. At the hearing, McKennan objected to the arbitrator's jurisdiction and to the fact that several pilots who would be affected by the arbitration were neither present nor represented at the hearing. It is also undisputed that, at the hearing, there was a closed-door session between the NPA, AirTran, and counsel for

6

the Mann-Dalland Pilots, which McKennan was not allowed to attend. The facts are in dispute, however, as to McKennan's role at the hearing: the Mann-Dalland Pilots provide affidavit testimony that he presented testimony, made legal arguments, and cross-examined witnesses, while McKennan provides an affidavit stating that he did none of these things, and that he did not represent anyone other than himself. The Mann-Dalland Pilots also present evidence that Donald Steward had notice of the hearing, but opted not to go, as his interests were represented by Griffin and McKennan. Steward provides an affidavit disputing this. Finally, the Mann-Dalland pilots present affidavit evidence that sometime prior to the hearing, a notice containing the time, date, and place of the hearing was posted on the NPA's bulletin board at AirTran headquarters, where notices of previous arbitrations had been posted. The Steward-McKennan pilots provide the affidavit of the NPA's grievance chairman, who swears that he knows of no such notice being posted.

After the hearing, the arbitrator decided that the AirTran-NPA collective bargaining agreement incorporated the Destination Sun seniority agreement, and revised the AirTran seniority rankings accordingly.

The Steward-McKennan pilots, whose seniority rights were negatively affected by the arbitrator's award, filed this action in the district court asking the district court to vacate the arbitrator's award. The parties filed cross-motions for summary

judgment, and the district court granted the Steward-McKennan Pilots' motion, setting aside the arbitration award. While the district court concluded that the arbitrator had not overstepped the bounds of the CBA, as his ruling was arguably within the essence of the CBA, it found that the Steward-McKennan Pilots had not been given the notice due them under the Railway Labor Act ("RLA"), 45 U.S.C. § 153 First (j). Rather than remanding the case to the arbitrator, the district court remanded the case to the Board, because the court concluded that the settlement agreement in Warzocha's case was insufficient to overcome the contractual grievance procedure in the CBA.

The Mann-Dalland Pilots appeal, and the Steward-McKennan Pilots cross-appeal.

III. ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

On appeal, the Mann-Dalland Pilots raise three issues. First, they contend that the district court erred when it concluded that the RLA's statutory "due notice" provision, 45 U.S.C. § 153 First (j), requires all involved employees to receive actual notice of the hearing of grievances affecting them. They contend that constructive notice satisfies the due notice requirement, and that the notice posted on the NPA bulletin board provided constructive notice. The Steward-McKennan Pilots maintain

8

that under the circumstances the RLA requires at least actual, if not formal, notice of the hearing.[1]

Second, the Mann-Dalland Pilots contend that there are disputed issues of material fact, making summary judgment inappropriate.

Third, the Mann-Dalland Pilots contend that the district court erred when it concluded that the grievance must be arbitrated by the Board rather than by a single arbitrator. They argue that the settlement in Warzocha's case, which stated that the Mann-Dalland grievance would be "arbitrated in separate proceedings," bound the NPA and AirTran to forego the contractual grievance procedure and proceed before a single arbitrator. (R.1-35 at Ex. 2, ¶ 10.) The Steward-McKennan Pilots argue that the Warzocha settlement language was ambiguous, and thus was insufficient to overcome the contractual grievance procedure calling for a hearing by the Board.

## IV. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, applying the same familiar standards as the district court. *Hallum v. Provident Life & Acc. Ins. Co.*, 326 F.3d 1374, 1375-76 n.1 (11th Cir. 2003).

---

[1]The Steward-McKennan Pilots cross appeal, raising two issues. The first is whether the Due Process Clause of the Fifth Amendment entitled them to actual notice of the time and place of the arbitration hearing. The second is whether the district court erred in deciding that the arbitrator did not exceed his jurisdiction, in that his award was within the essence of the CBA. Because we affirm the district court's setting aside the award on grounds of the statutory due notice requirement, the award has no further force or effect. Thus, we do not reach either of these issues.

9

V.  DISCUSSION

As we noted above, the issues on appeal deal with the due notice requirement of 45 U.S.C. § 153 First (j) and the proper forum for the grievance on remand.  We will consider the issues in turn.

## A.  The Railway Labor Act's Due Notice Requirement

Under the terms of the RLA, a court may set aside the award of an adjustment board for one of only three reasons: the board did not follow the requirements of the RLA, exceeded its jurisdiction, or acted fraudulently or corruptly.[2]  45 U.S.C. § 153 First (p); *Henry v. Delta Air Lines*, 759 F.2d 870, 872 (11th Cir. 1985).  Here, the district court set the award aside because it found that the arbitrator, who sat in place of the Board, failed to comply with the RLA's due notice requirement.  In reviewing this conclusion, we must address an issue that the district court did not explicitly address: whether the due notice requirement applies to proceedings before airline adjustment boards.  We will then turn to the question of what type of notice satisfies the due notice requirement.

---

[2]A court may also set aside a board's award if an involved party has been denied "fundamental due process."  *Hall v. Eastern Air Lines, Inc.*, 511 F.2d 663, 664 (5th Cir. 1975).

1.  Does 45 U.S.C. § 153 First (j)'s Due Notice Requirement Apply
to Proceedings Before an Airline Board of Adjustment?

We have never considered whether the due notice requirement of 45 U.S.C. § 153 First (j) applies to proceedings before an airline board of adjustment. The district court *did* apply the statutory due notice requirement in this case, but did so without discussing whether the requirement *should* apply. Based on our review of the history and purposes of the RLA, we conclude that it should.

When Congress extended the Railway Labor Act to the airline industry, it expressly stated that 45 U.S.C. § 153, which contains the statutory due notice requirement, did not apply to proceedings before airline adjustment boards. 45 U.S.C. § 182. *See also Whitaker v. American Airlines, Inc.*, 285 F.3d 940, 943-44 (11th Cir. 2002) (discussing the extension of the RLA to the airline industry). But, when the Supreme Court confronted the question of whether there was a federal cause of action to enforce an award of an airline adjustment board, it looked to the entirety of the RLA, rather than just those provisions which Congress expressly applied to the airline industry. *International Assocation of Machinists v. Central Airlines*, 372 U.S. 682, 685-89, 83 S. Ct. 956, 958-61 (1963). The Court concluded that Congress intended that the awards of airline adjustment boards be enforceable by a federal cause of action, based on the RLA's purpose of quickly and finally resolving

11

employee grievances to avoid strikes. *Id*. at 687, 690, 83 S. Ct. at 959, 961. The Court went on to suggest that courts confronted with similar questions in the future should consult other provisions of RLA which do not expressly apply to airline adjustment boards:

> the provisions of a § 204 [codified at 45 U.S.C. § 184] contract, such as those governing the composition of the adjustment board, *the procedures to be employed as to notice and hearing* or for breaking deadlocks, or the finality to be accorded board awards, are to be judged against the Act and its purposes and enforced or invalidated in a fashion consistent with the statutory scheme.

*Id.* at 694, 83 S. Ct. at 963 (emphasis added).

Only one published opinion has addressed the issue of whether the statutory due notice requirement ought to apply to airline adjustment board proceedings. In that opinion, the court considered whether a group of pilots would be given notice of a hearing before an airline adjustment board. *Air Line Pilots Association International v. Texas Int'l Airlines, Inc.*, 567 F. Supp. 66, 76 (S.D. Tex. 1983). The court followed the Supreme Court's admonition to look to the notice requirements which the RLA imposes on railroad adjustment boards. *Id*. (quoting *International Ass'n of Machinists*, 372 U.S. at 695, 83 S. Ct. at 963.) The *Texas Int'l* court noted, as the Supreme Court had, that Congress's purpose was to "extend the same benefits and obligations to air carriers and their employees that already applied to the railroad

12

industry" when it called for the formation of airline adjustment boards. *Texas Int'l*, 567 F. Supp. at 76, *citing International Association of Machinists*, 372 U.S. at 686, 83 S. Ct. at 959. It noted that other courts had applied other aspects of § 153 to airline adjustment boards to further this purpose, and concluded that this purpose called for the due notice requirement to apply to airline adjustment boards. *Texas Int'l*, 567 F. Supp. at 76, *citing with approval International Union United Automobile, Aircraft & Agricultural Implement Workers v. Delta Air Lines*, 83 F. Supp. 63, 63 (N.D. Ga. 1949) (stating that 45 U.S.C. § 184 makes § 153 applicable to air carriers and their employees). We agree with the *Texas Int'l* Court's analysis: based on the RLA's purpose of providing quick and final resolution of grievances, and on the Supreme Court's suggestion in *International Association of Machinists*, 372 U.S. at 686, 83 S. Ct. at 959, we conclude that § 153 First (j)'s due notice requirement applies to proceedings conducted by airline adjustment boards.[3]

2. What Kind of Notice does the Due Notice Provision Require?

The due notice provision requires an adjustment board to "give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them." 45 U.S.C. § 153 First (j). An employee is "involved"

---

[3]*Cf. Air Line Pilots Association International v. Eastern Air Lines*, 632 F.2d 1321, 1323 (5th Cir. 1980) *and Henry v. Delta Air Lines*, 759 F.2d 870, 872 (11th Cir. 1985) (applying the limited scope of review provisions of § 153 First (p) to airline adjustment boards' awards).

for purposes of § 153 First (j) if he would be adversely affected by the board's decision. *Estes v. Union Terminal Co.*, 89 F.2d 768, 770 (5th Cir. 1937). Here, the Steward-McKennan Pilots stood to have their seniority rankings shifted downward. Because seniority affects, among other things, the airline's consideration of which pilots to award jobs to when there are fewer assignments than there are pilots, a lowered seniority ranking is an adverse effect. Thus, the Steward-McKennan Pilots were involved employees and entitled to due notice of the grievance hearing.

The Supreme Court has said that due notice is a flexible standard which takes into account the realities of the relationships between the employer, the union, and the employee. *See Elgin, J. & E. Ry. Co. v. Burley*, 327 U.S. 661, 666 n.9, 66 S. Ct. 721, 723 n.9 (1946) ("*Elgin II*"). In the usual case, the union represents the employee before the board. *Id*. at 665-66, 66 S. Ct. at 723; *Estes*, 89 F.2d at 770-71. Thus, in the usual case, when the board gives the union, rather than the employee, notice of the hearing, courts will not automatically set aside the board's award for failure to give due notice to the employee. *See, e.g., O'Neill v. Public Law Bd. No. 550,* 581 F.2d 692, 695-96 (7th Cir. 1978) (upholding board's award against due notice challenge where complaining employee had authorized union to represent him and to receive notices from the board, and the board had provided the union with notice of the grievance hearing). *But see Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748,

14

751 (6th Cir. 1984) (setting aside board's award where board provided notice to union, but union failed to give notice to employee); *Cole v. Erie Lackawanna Ry. Co.*, 541 F.2d 528, 534-36 (6th Cir. 1976) (setting aside board's award where board provided union representing employee with notice, and employee knew when the hearing was to take place, but evidence showed that employee did not grasp the significance of the hearing).

This, however, is the unusual case in which the union does not represent the involved employees before the board. We have said that, in these unusual cases, the board should personally notify the involved employees who are unrepresented. *Estes*, 89 F.2d at 771 (remanding to allow an unrepresented employee to intervene in the enforcement action and thereby vindicate his right to due notice, where the employee received actual, but not personal, notice). *Cf. Meeks*, 738 F.2d at 750 ("[T]he 'due notice' requirement of § 153 First (j) is satisfied if an employee is given formal notice of the proceedings or if the employee has authorized his union to process his grievance and he also has actual notice of the proceedings."), *citing Cole*, 541 F.2d at 534. If the group of involved employees is large, the board may provide notice "by posting it in appropriate places, the same as is usually done when an injunction is issued against a large class of persons." *Estes*, 89 F.2d at 771. We warned that "[t]he difficulty of giving notice, or rather the inconvenience occasioned to the Board by

15

doing so, would not excuse compliance with the law." *Id.* Above all, we stated that while this notice "may be informal and delivered by mail," the notice must be "adequate." *Id.* at 770-71. To be adequate, it must include the time, date, and place of the hearing. *See, e.g., United Steelworkers Local 1913 v. Union R.R. Co.*, 597 F.2d 40, 43 (3d Cir. 1979) ("[P]etitioner must have notice of the date and time of the hearing and should be provided an opportunity to be heard in person, or by a representative, as required by 45 U.S.C. § 153 First (j)."). And, it must be given to the employee in advance, so that the employee has a fair opportunity to prepare for the hearing. *See Cole*, 541 F.2d at 534 ("[N]otice for this purpose is notice of the hearing for a sufficient period prior thereto to permit the employee to consult with union officials and relay such information as he possesses which might allow the union to more effectively present his claim.").

There are other good reasons for requiring the board to provide personal notice to an involved employee. First, to fulfill the RLA's purpose of providing a final resolution of grievances, the board's hearing must be full and fair to all involved employees. *See Transportation-Communication Employees Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 164-65, 87 S. Ct. 369, 373-74 (1966) (remanding case to railroad adjustment board for new hearing, where involved employees' union opted not to participate in hearing: Court reasoned that RLA's stated purpose of final resolution

16

of all disputes involved in grievance called for all involved parties to be represented at hearing). This avoids the inefficiency of piecemeal resolution of disputes, as well as alleviating a second concern: the uncertainty of the board's award being subject to constitutional attack. *See English v. Burlington N. R.R.*, 18 F.3d 741, 745 (9th Cir. 1994) (finding no Fifth Amendment Due Process problem where board followed requirements of § 153 First (j)). Thus, we hold that the RLA's statutory due notice provision requires an adjustment board to provide involved employees with personal notice.

### 3. Was Summary Judgment, Based on the Due Notice Provision, Appropriate in this Case?

Here, the district court concluded that the notice that may or may not have been posted on the bulletin board did not satisfy the statutory due notice requirement. It reasoned that any such posting was inadequate because the involved pilots were "specifically identified" and were "directly affected by changes in the seniority list." (R.3-86 at 11.) The court confirmed its reasoning by noting the way the facts actually played out: the involved employees "did not receive actual notice." *Id*. We agree with the district court's conclusion. Under these particular facts, where there was a relatively small group of specifically-identified, involved employees, and where the effect on these employees was potentially drastic, personal notice alone would satisfy

17

the due notice requirement.[4]  We conclude that the arbitrator did not meet the statutory due notice requirement because he did not give personal notice to all the Steward-McKennan Pilots.  We need not consider whether, based on the actual notice of the arbitration hearing that two or three of these pilots may have had, the award should stand against those who had actual notice.  We do not decide this, first, because the Mann-Dalland Pilots do not argue that the award should stand if some, but not all, of the Steward-McKennan Pilots had actual notice.  Second, if we were to parse the record to find that some of the pilots had actual notice, it would be impossible to unravel the award as to those who did not receive actual notice but enforce it as to those who did.  And, third, as we conclude below, a single determination of the Mann-Dalland grievance should proceed uniformly for all involved pilots pursuant to the CBA's grievance resolution provisions.

Because the undisputed facts show that the arbitrator failed to provide the personal notice required by 45 U.S.C. § 153 First (j), we conclude that the district court correctly granted the Steward-McKennan Pilots' motion for summary judgment, and set aside the arbitrator's award for failure to comply with the terms of the RLA.

---

[4]We reiterate that while *Estes*, 89 F.2d at 770-71, stated that personal notice may be delivered by mail, it also emphasized the informal nature of board proceedings, and stated that personal notice may be informal.  The flexible nature of the due notice requirement could allow for personal notice by in-person or telephone conversation, by a letter delivered by mail or e-mail, or by delivery to the involved employee's home. *Cf. Dusenberry v. United States*, 534 U.S. 161, 176-77, 122 S. Ct. 694, 704-05 (2002) (collecting cases describing the many modes of adequate notice).

18

*See United Steelworkers Local 1913*, 597 F.2d at 43 (remanding case to adjustment board for rehearing, where board had not given involved employee due notice).

B. The Proper Forum for this Grievance on Remand

After it set aside the arbitrator's award, the district court confronted the question of who should decide the Mann-Dalland grievance on remand. The district court considered the grievance resolution provisions of the CBA and the settlement agreement in Warzocha's case, and concluded that the settlement provisions did not supercede the RLA and CBA's requirement of submission to the Board. The Mann-Dalland Pilots contend that this was error. They argue that AirTran and the involved employees, through their union, agreed in the settlement that a single arbitrator would hear and decide the Mann-Dalland Grievance.

The Warzocha settlement agreement provided that the Mann-Dalland grievance "will be arbitrated in separate proceedings, if necessary." (R.1-35 at Ex. 2, ¶ 10.) At best, "will be arbitrated" is ambiguous: while it might refer to consideration by a single arbitrator, the Supreme Court and this court also refer to a hearing and disposition by an adjustment board as "arbitration." *See, e.g., Consol. Rail Corp. v. Railway Labor Executives' Association*, 491 U.S. 299, 303-04, 109 S. Ct. 2477, 2481 (1989) ("A minor dispute in the railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board . . . or before an

19

adjustment board established by the employer and the unions representing the employees."); *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1050 (11th Cir. 1996) (stating that airline employee's breach of contract claim was a minor dispute which "must be submitted to arbitration before a system board of adjustment"). When we consider this ambiguous statement against the backdrop of the RLA, which provides for grievance resolution before an adjustment board, we hold that the district court correctly concluded that the Warzocha settlement agreement did not supercede the CBA's requirement of submission to the Board.

## VI. CONCLUSION

Because we conclude that the arbitrator failed to satisfy the due notice requirement of 45 U.S.C. § 153 First (j), and, under the CBA, the grievance should be heard by the AirTran Airways Pilots' System Board of Adjustment, the district court's summary judgment setting aside the arbitrator's award and remanding the grievance to the Board is affirmed.

AFFIRMED.