**INDEPENDENT UNION OF FLIGHT ATTENDANTS, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC. and Pan American Corporation, Defendants.**

**No. 87 Civ. 1640 (LBS).**

United States District Court, S.D. New York.

July 16, 1987.

Bredhoff & Kaiser, Washington, D.C., for plaintiff; George H. Cohen, Mady Gilson, David A. Slansky, of counsel.

Vladeck, Waldman, Elias & Englehard, P.C., New York City, for plaintiff; Seymour M. Waldman, Patricia McConnell, of counsel.

Richard Schoolman, New York City, for defendants Pan American World Airways, Inc.

SAND, District Judge.

Plaintiff, Independent Union of Flight Attendants ("IUFA"), moves for summary judgment against defendants, Pan American World Airways, Inc. ("PAWA") and its parent company, Pan American Corporation, charging that the defendants have violated the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and IUFA's collective bargaining agreement with Pan American by refusing to arbitrate what IUFA describes

as a contract dispute. Defendants have cross-moved to dismiss IUFA's complaint for lack of subject matter jurisdiction and for costs and sanctions.

The defendants' motion to dismiss for lack of subject matter jurisdiction is granted. Therefore, we do not reach plaintiff's motion for summary judgment. The motion for costs and sanctions is denied.

## Background

In evaluating a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a "court is not restricted to the face of the pleadings, but may review any evidence such as affidavits and testimony...." 2A J. Moore, *Moore's Federal Practice* ¶ 12.07 [2.–1] (2d ed. 1986). Our statement of the relevant facts is based on both the pleadings and the affidavits submitted in connection with the motions.

PAWA is an international airline which is a wholly-owned subsidiary of defendant Pan American Corporation. IUFA is the exclusive collective bargaining representative of PAWA's flight attendants. IUFA obtained its representative status through a certification issued by the National Mediation Board in 1977 after IUFA won an election among PAWA's flight attendants. *See* Affidavit of Bonnie Singer at ¶¶ 2, 3.

At all relevant times, PAWA and IUFA have been parties to a collective bargaining agreement (the "Agreement") which governs the terms and conditions of flight attendant employment. The Agreement recognizes IUFA as "the sole collective bargaining representative of the craft or class of Flight Attendants in the employ of the Company." *See* Agreement, Section 1. The Agreement also provides that:

> All flying performed by any subsidiary established by Pan Am or any other organization which Pan Am or a subsidiary establishes shall be performed by Flight Attendants on the Pan Am Flight Service System Seniority List in accordance with the terms and conditions of this Agreement or any other applicable Agreement between the Company and the IUFA. *Id.*

Pursuant to a side letter agreement, defendant Pan American Corporation is bound by the PAWA–IUFA collective bargaining agreement to the same extent as PAWA.

In April 1986, Pan American Corporation purchased a regional airline known as Ransome Airlines, Inc. ("Ransome"). Prior to the acquisition, Ransome had been an independent carrier, unaffiliated with either of the defendants. Subsequent to the acquisition, Ransome became a wholly-owned subsidiary of the entity which, as we have stated, is also PAWA's parent company—Pan American Corporation. In October 1986, Ransome's name was changed to Pan American Express, Inc. ("Pan Am Express"). *See* Declaration of David E. Ferrucci at ¶¶ 1–3.

There are several dozen flight attendants who work the Pan Am Express flights but none of these flight attendants is on the Pan American Flight Service System Seniority List. At no time have the Ransome/Pan Am Express flight attendants been represented by a union—neither before nor after the acquisition.

IUFA claims that pursuant to its agreements with the defendants, flight attendants on the System Seniority List have the right to perform the work now performed by unrepresented employees on the Pan Am Express flights. To enforce what it sees as a bargained-for contract right, IUFA pursued the grievance and arbitration procedures set forth in the Agreement. Specifically, after PAWA denied IUFA's grievance, the union promptly petitioned to the System Board of Adjustment and invoked expedited arbitration procedures. *See* Complaint ¶¶ 12–14. PAWA, in turn, responded by declining arbitration and informed IUFA of the company's position, asserted again here as part of the defendants' claim that the Court lacks subject matter jurisdiction, that "the adjustment board lacks jurisdiction to decide this grievance." *See* Complaint, Exhibit K. After it became apparent that PAWA would not willingly submit to arbitration before the adjustment board, IUFA filed its complaint in the Southern District of New York.

## Discussion

A consideration of the threshold jurisdictional question requires a brief review of the tripartite dispute resolution scheme which Congress established in enacting the Railway Labor Act, a statute which regulates labor relations on the nation's railroads and airlines. The statute defines three types of labor disputes and "establishes a distinct resolution procedure" for each type of dispute. *International Brotherhood of Teamsters (Airline Division) v. Texas International Airlines,* 717 F.2d 157, 158 (5th Cir.1983). "Minor" disputes concern the application or interpretation of an existing collective bargaining agreement. 45 U.S.C. § 184. These disputes are "committed to a grievance-arbitration process" before an authorized system board of adjustment. *Texas International Airlines,* 717 F.2d at 158. "Major" disputes involve the formation of collective bargaining agreements, and the resolution of such disputes proceeds according to conference and mediation procedures pursuant to Section 6 of the Act. 45 U.S.C. §§ 156, 181. "Representation" disputes involve the definition of a bargaining unit and the determination of the employee collective bargaining representatives. "Representation disputes include issues whether two related carriers will be treated as one for representation purposes, and whether a craft or class must be system-wide or may be split for representation purposes." *Texas International Airlines,* 717 F.2d at 159 (footnotes omitted). Under Section 2, Ninth of the Railway Labor Act, 45 U.S.C. 152 Ninth, the National Mediation Board has exclusive jurisdiction over all representation disputes.

IUFA claims that the present dispute with the defendants is a "minor" dispute and the Court should therefore compel PAWA to submit to arbitration before a system board of adjustment. Defendants, by contrast, assert that the controversy is more properly characterized as a representation dispute within the sole jurisdiction of the National Mediation Board. We agree with defendants' position, although we believe the question is a close one.

In deciding whether a particular labor dispute is minor, major or representational, a court is guided by certain widely accepted principles. Justice O'Connor, sitting as a Circuit Justice, recently observed that:

> [t]he great weight of the caselaw supports the proposition that disputes as to the effect of collective-bargaining agreements on representation in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board.

*Western Airlines v. Intern. Broth. of Teamsters,* —— U.S. ——, 107 S.Ct. 1515, 1517, 94 L.Ed.2d 744 (O'Connor, Circuit Justice 1987).

It is also generally recognized that labor relations problems after a merger or acquisition in the airline industry may in some instances straddle the Railway Labor Act's seemingly discrete lines of demarcation. That is, what may be characterized as a "minor" dispute over the interpretation of a contract may also implicate concerns which are representational in nature. Where the issues thus overlap, a jurisdictional problem arises. The proper course for a court to follow in such circumstances is to allow the National Mediation Board "alone to consider the post-merger problems that arise from existing collective bargaining agreements." *Texas International Airlines,* 717 F.2d at 164. *See also Western Airlines,* 107 S.Ct. at 1517.

Another recognized principle holds that a dispute may be considered representational, even if it does "not arise between two rival representatives. It is enough that there is one claimant and employees who are or who may be either hostile or indifferent." *Air Line Pilots Ass'n v. Tex. Intern. Airlines, Inc.,* 502 F.Supp. 423, 425 (S.D.N.Y.1980). *See also Summit Airlines v. Teamsters Local Union No. 295,* 628 F.2d 787, 793 n. 3 (2d Cir.1980). (Dispute requirement met "even though only one union seeks representation if some employees are indifferent or hostile to being represented by that union or by any other union").

The question presented in the case at bar, according to IUFA, is not whether

IUFA is to be the collective bargaining representative of the flight attendants who service the Pan Am Express Flights but whether the scope clause of the collective bargaining agreement is to govern the assignment of work on Pan Am Express Flights. Although there is no doubt that the union's complaint is cast in contract terms and purports to seek only the enforcement of the Agreement and the corresponding side letter, it appears that a decision on the contract issues will necessarily implicate representational concerns. While this is not a traditional dispute over representation, the unrepresented flight attendants who worked Ransome's flights in the past and who now service the Pan Am Express flights have "a representational stake" in the matters raised. *Independent Union of Flight Attendants v. Pan American World Airways, Inc.*, 789 F.2d 139, 143 (2d Cir.1986). That only one union is involved does not, as previously noted, negate the existence of a representation dispute.

In certain respects, this case resembles the litigation which led to the Second Circuit's decision in *Air Line Pilots Ass'n v. Texas Intern. Airlines*, 656 F.2d 16 (2d Cir.1981). In that case, the parent company of Texas International expanded its operations by establishing a new, formally separate subsidiary, New York Air, which employed non-union personnel. The union, which represented Texas International's pilots, argued that union pilots had the right to perform the work on the new flights pursuant to the collective bargaining agreement and applicable seniority provisions. *Id.* at 19. The Second Circuit affirmed Judge Nickerson's finding that the facts raised a representation dispute that was not justiciable. *Id.* at 17.

IUFA distinguishes the Second Circuit's decision on two grounds. First, the union states that this case, unlike the Second Circuit case, is based on the presence of a scope clause which one set of employees has in its contract. Second, IUFA asserts that our circuit court's decision in *Texas International* turned largely on the fact that the union had not invoked the Railway Labor Act's dispute resolution mechanisms but had instead sought judicial intervention "to prevent what it perceived as [the carrier's] illegal attempt ... to circumvent its collective bargaining obligations." *Id.* at 20. *See also Air Line Pilots Ass'n v. Texas Intern. Air*, 567 F.Supp. 66, 72 (S.D. Tex.1983) (Union's claim held to be a "minor" rather than a "representation" dispute).

Notwithstanding the distinctions IUFA has drawn, we believe this case raises a representation dispute. It is true that from IUFA's perspective a contractual scope clause is at the center of the controversy. It is likewise true, as IUFA points out, that the present case differs from the Second Circuit *Texas International* litigation in that the union in this case filed its federal court action only after pursuing grievance procedures. In essence, however, the present case is similar to *Texas International*. The IUFA flight attendants in this case claim, just as the pilots in *Texas International* claimed, that work on a related carrier should be assigned to them. To the extent that *Air Line Pilots Ass'n Intern. v. Texas Intern. Air*, 567 F.Supp. 66 (S.D.Tex.1983), is inconsistent with our analysis, we decline to adopt its reasoning.

In concluding that there are representation issues present here, we highlight several factors. First, it is not clear whether IUFA's previously obtained certification applies to the present Pan Am Express flight attendants (the former Ransome employees). Given that the Ransome acquisition took place in a post-certification context, the question of the present scope of the prior certification raises a representation issue which may play a role in the resolution of this dispute and which the National Mediation Board has jurisdiction to decide under the statute. Second, whether two related carriers—in this case, PAWA and Pan Am Express—should be treated as a single carrier for representation purposes is considered a representation matter within the National Mediation Board's jurisdiction. *International Brotherhood of Teamsters (Airline Division) v.*

*Texas International Airlines,* 717 F.2d at 159.

It is settled that a "court may not entertain an action involving ... a [representation] dispute even if it arises in the context of otherwise justiciable claims." *Id.* at 161. In addition, the Second Circuit has held that "[w]here a representation dispute appears on the fact of the complaint, even in the absence of a challenge by a competing union or an application to the NMB, the court is bound to dismiss the action." *Air Line Pilots Ass'n v. Texas Intern. Airlines,* 656 F.2d at 24. This precept applies even where the presence of a representation dispute is "murky." *Id.*

### Conclusion

For the foregoing reasons, we grant the defendants' motion to dismiss on subject matter jurisdiction grounds. We find no merit in the defendants' application for costs and sanctions.

Complaint dismissed.

SO ORDERED.