**FLIGHT ENGINEERS' INTERNATION-
AL ASSOCIATION, PAA CHAPTER,
AFL–CIO, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS,
INC. and Pan American Corporation,
Defendants.**

No. 87 CIV. 6694 (PKL).

United States District Court,
S.D. New York.

July 5, 1989.

O'Donnell & Schwartz, New York City,
for plaintiff; David B. Rosen, of counsel.

Eikenberry & Futterman, New York
City, for defendants; Richard Schoolman,
of counsel.

OPINION AND ORDER

LEISURE, District Judge.

Plaintiff, Flight Engineers' International Association ("FEIA" or the "union"), moves for summary judgment against defendants, Pan American World Airways, Inc. ("PAWA") and Pan American Corporation ("Pan Am Corp."). The complaint charges that the defendants have violated the Railway Labor Act, 45 U.S.C. § 151, *et seq.,* and FEIA's collective bargaining agreement by refusing to arbitrate what FEIA describes as a contract dispute. Defendants have cross-moved to dismiss FEIA's complaint for lack of subject matter jurisdiction.

As indicated below, the defendants' motion to dismiss for lack of subject matter jurisdiction is granted. Therefore, the Court does not reach the plaintiff's motion for summary judgment.

In evaluating a Fed.R.Civ.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may consider evidentiary matters presented by affidavit or otherwise, and is not restricted to the face of the pleadings. *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986). *See also Exchange Nat. Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976). Consideration of extraneous materials does not convert a motion under Fed.R.Civ.P. 12(b)(1) into a Fed.R.Civ.P. 56 motion. *Kamen, supra,* 791 F.2d at 1011.

A motion to dismiss under Rule 12 must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *Rauch v. RCA Corp.,* 861 F.2d 29 (2d Cir.1988); *Morales v. New York State Department of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). The Court must accept the pleader's allegations of facts as true, liberally construe those allegations, and make such reasonable inferences as may be drawn in its favor. *Dahl-*

*berg v. Becker,* 748 F.2d 85, 88 (2d Cir. 1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Murray v. City of Milford, Connecticut,* 380 F.2d 468, 470 (2d Cir.1967). *See also Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686; *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir. 1986). On a motion to dismiss, the Court must "determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985). The following statement of the relevant facts is based both on the pleadings and the affidavits submitted in connection with the motions, but the determinative question, for present purposes, raises a pure issue of law.

*Background*

PAWA is an international airline, and a wholly-owned subsidiary of defendant Pan American Corp. FEIA is the exclusive collective bargaining representative of PAWA's Operations Training Instructors ("OTI's"). FEIA obtained its representative status through a certification issued by the National Mediation Board in 1968. *See* Article 1(A) of the Collective Bargaining Agreement (the "Agreement"), attached as Exhibit A to First Amended Complaint (the "Complaint").

Article 1(B) of the Agreement contains what is often called a "scope" clause; this agreement's scope clause requires PAWA to utilize FEIA-represented OTI's employed by PAWA whenever PAWA performs training of, *inter alia,* pilots, flight attendants, and ground personnel. The Agreement specifically provides that "OTI's by component group, shall exclusively perform the instructional work which is conducted by the Company requiring the services of an Instructor."

In addition to the original Agreement, a letter dated February 19, 1986 was signed by FEIA, PAWA, and Pan Am Corp. and was subsequently appended to the Agreement as Appendix U. That letter stated in relevant part:

Pan Am Corporation, parent of Pan American World Airways, Inc., agrees that it or any successor to it will be bound by Article I of the Pan American World Airways, Inc.—FEIA collective bargaining agreement covering Operations Training Instructors in the same manner as if references to Pan American World Airways, Inc., in Article I read Pan American Corporation.

In April 1986, after the Agreement was supplemented by the above noted letter, Pan Am Corp. purchased Ransome Air-Lines, Inc. ("Ransome"), a regional airline. Prior to the acquisition, Ransome had been an independent carrier, unaffiliated with either of the defendants. Subsequent to the acquisition, Ransome became, like PAWA, a wholly-owned subsidiary of Pan American Corp. In October 1986, Ransome's name was changed to Pan American Express, Inc. ("Pan Am Express").

After being acquired by Pan Am Corp., Ransome continued to utilize its *own* employees, not PAWA–employed/FEIA–represented OTI's, to conduct training for its own pilots, flight attendants, and ground personnel. Of the approximately 16 Ransome employees training other Ransome employees, some are represented by the Independent Union of Flight Attendants, some by the Air Line Pilots Association, and some are un-represented. *See* Affidavit of David C. Reeve, sworn to on December 6, 1988, ¶ 2–3.

The FEIA took the position that PAWA and Pan Am Corp. violated Article 1(B) of its agreement by failing to utilize FEIA-represented OTI's to train Ransome personnel. FEIA consequently filed its initial grievance and sought to refer the grievance to a five man Board of Adjustment, as provided by Article 23 of the Agreement. As a remedy, FEIA sought the assignment of work to FEIA–represented OTI's, as well as damages. PAWA responded by denying FEIA's grievance, and declined to submit to arbitration by the Board of Adjustment. PAWA stated that it would submit to arbitration by the Board of Adjustment only if compelled to do so by court

order. *See* Complaint ¶ 13–15. FEIA, in turn, filed this action.

Following the decision of a similar case, *IUFA v. Pan American World Airways, Inc.*, 664 F.Supp. 156 (S.D.N.Y.1987), *aff'd*, 836 F.2d 130 (2d Cir.1988), decided in PAWA's favor, FEIA amended its grievance. The amended grievance eliminated any claim to the work, and sought only the money its PAWA–employed OTI's would have earned if allowed to train Ransome personnel. PAWA stood by its belief that the grievance was not arbitrable, and reiterated its position that it would not arbitrate before the Board of Adjustment, absent a court order to do so. Subsequently, FEIA filed the First Amended Complaint in this Court, seeking only damages.

Underlying PAWA's refusal to arbitrate the dispute is PAWA's position that the Board of Adjustment lacks jurisdiction to decide the grievance. PAWA claims that representational issues, namely, whether two related airlines will be treated as a single carrier for representation purposes, and what should be the effect of one carrier's collective bargaining agreement with a union when that carrier acquires or becomes affiliated with a second carrier, are implicated. When representation issues are involved, the exclusive statutory decision-making authority of the National Mediation Board is invoked. The issue now before the Court is whether the exclusive jurisdiction of the National Mediation Board over "representational disputes," pursuant to § 2 Ninth of the Railway Labor Act ("RLA"), 45 U.S.C. § 152 Ninth, precludes resolution of the dispute by a Board of Adjustment acting pursuant to § 204 of the RLA, 45 U.S.C. § 184 and Article 23 of the parties' collective bargaining agreement.

### Discussion

This action involves the threshold jurisdictional question of which forum will initially entertain the dispute. FEIA claims that the present conflict with the defendants is a "minor" dispute, and under the statutory resolution scheme of the RLA, the Court should therefore compel PAWA to submit to arbitration before the Board of Adjustment. PAWA, while agreeing that the dispute is minor, argues that the dispute is also representational. As such, it would have to be resolved by the National Mediation Board, and the Court would consequently lack subject matter jurisdiction.

A brief review of the tripartite dispute resolution scheme established by Congress in the RLA is necessary for the resolution of the jurisdictional question presented by this case. The RLA regulates labor relations on the nation's railroads and airlines. The statute defines three types of labor disputes, and establishes a distinct resolution procedure for each type of dispute.

"Minor" disputes concern the application or interpretation of an existing collective bargaining agreement. *See* 45 U.S.C. § 184. These disputes are "committed to a grievance-arbitration process" before an authorized system board of adjustment. *See, e.g., IUFA v. Pan American World Airways, Inc.*, 664 F.Supp. 156, 158 (S.D. N.Y.1987), *aff'd*, 836 F.2d 130 (2d Cir.1988). "Major" disputes involve the formation of collective bargaining agreements, and the resolution of such disputes proceeds according to conference and mediation procedures, pursuant to section 6 of the Act. *See* 45 U.S.C. §§ 156, 181. Neither party contends that the present dispute is "major."

Finally, "representation" disputes involve the definition of a bargaining unit, and the determination of employee collective bargaining representatives. "Representation" disputes include whether two related carriers will be treated as one for representation purposes, and whether a craft or class must be system-wide or may be split for representation purposes. *See, IUFA, supra,* 664 F.Supp. at 158. Under Section 2, Ninth of the Railway Labor Act, 45 U.S.C. § 152 Ninth, the National Mediation Board has exclusive jurisdiction over all representation disputes.

In deciding whether a particular labor dispute is minor, major or representational, a court is guided by certain widely accepted principles. Justice O'Connor, sitting as a Circuit Justice, observed that:

[t]he great weight of the case law supports the proposition that disputes as to the effect of collective-bargaining agreements on representation in an airline merger situation are representation disputes within the exclusive jurisdiction of the National Mediation Board. *Western Airlines v. Intern. Broth. of Teamsters*, 480 U.S. 1301, 1305, 107 S.Ct. 1515, 1517, 94 L.Ed.2d 744 (O'Connor, Circuit Justice 1987).

It is also generally recognized that what may be characterized as a "minor" dispute over the interpretation of a contract may also implicate concerns which are representational in nature. The proper course for a court to follow in such circumstances is to allow the National Mediation Board "alone to consider the post-merger problems that arise from existing collective bargaining agreements." *Int. Bro. of Teamst. Etc. (Air. Div.) v. Tex. Int. Air.*, 717 F.2d 157, 164 (5th Cir.1983). *See also Western Airlines, supra*, 480 U.S. at 1305, 107 S.Ct. at 1517. Moreover, even though a representational dispute may be murky, its presence, together with the traditionally narrow role of the courts in enforcing the RLA, requires the conclusion that the Court lacks subject matter jurisdiction over the action. *Air Line Pilots Ass'n v. Texas Intern. Airlines*, 656 F.2d 16, 24 (2d Cir. 1981).

Both parties recognize that many of these same issues, involving these same entities, were resolved by the Court in *IUFA, supra*, 664 F.Supp. 156. This action largely turns on the degree that the factual and legal principles here are the same, or distinguishable, from that case. In *IUFA*, a flight attendant's union brought an action against a subsidiary airline (PAWA) and its parent company (Pan Am Corp.), alleging that they violated the Railway Labor Act and a collective bargaining agreement by refusing to arbitrate a contract dispute. The District Court, Sand, J., granted the defendants' motion to dismiss for lack of subject matter jurisdiction. The

Court held that the union's claim that flight attendants on the union's seniority list had the right to perform work on flights of another subsidiary airline, which was then being performed by unrepresented employees, involved a representation dispute and, consequently, the exclusive jurisdiction of the National Mediation Board. The Second Circuit subsequently affirmed the District Court's decision.

### Demand for Work Versus Claim for Damages

Plaintiff's attempts to distinguish *IUFA* and the present case ultimately turn upon the notion that seeking contractual damages calls for a different result than seeking the right to perform the work; that representational issues are not implicated in the former action, while they may be in the latter.[1] The Court does not find this distinction determinative, and it does not strike at the essence of the *IUFA* opinion. The *IUFA* Court stated, "[i]n essence ... [t]he IUFA flight attendants in this case claim, just as the pilots in *Air Line Pilots Ass'n v. Texas Intern. Airlines*, 656 F.2d 16 (2d Cir.1981) claimed, that work on a related carrier should be assigned to them." That same basic question underlies any claim for past damages here; the union claims that work on a related carrier should have been assigned to them.

Plaintiff seeks to isolate the damage issue from a determination of representation, but the inquiries are inextricable. In order to determine whether the plaintiff is entitled to damages, the court must first conclude that the union is entitled to the work. Deciding the representation issue is a necessary predicate to determining whether a contractual remedy of damages is appropriate.

The *IUFA* Court highlighted several factors that are indicative of representational concerns. First, when the application of previously obtained certification by a union to a newly acquired subsidiary is

---

1. The Court notes that plaintiff's original complaint did not make any allusions to a distinction between damages and demanding the work itself. FEIA demanded both the work and damages. After the *IUFA* decision, plaintiff amended its complaint to make the claim for damages alone.

not clear, a representation issue may be said to exist. Second, whether two related carriers should be treated as a single carrier for representational purposes involves a matter within the National Mediation Board's jurisdiction. *IUFA, supra*, 664 F.Supp. at 158.

FEIA's attempts to show the irrelevancy of the aforementioned factors to the present case in fact demonstrate that FEIA's postulated distinction between damages and injunctive-type relief is not meaningful. First, FEIA argues that in *IUFA*, but not in the case at hand, the result of the implementation of a contractual provision was the reassignment of all of one bargaining unit's work to another, which determined all questions about the representation of the first unit by extinguishing it. It is clear, however, that an award of damages here would effectively require the same determination, namely, that the FEIA bargaining unit has a superior and controlling right to the work. An award of the damages sought here would have the same practical effect on settling representation issues, and extinguishing the possibility of a separate Ransome bargaining unit.

Second, FEIA notes that the *IUFA* Court had to make a preliminary determination of whether the Ransome flight attendants should be considered to be on the Pan Am Seniority List, in order to determine whether any Ransome employees needed to be displaced. Again, that same essential determination, whether Ransome workers have a right to be considered for the work, is necessary in the case at hand. To grant the damages which the plaintiff seeks, the Court must resolve the right to the work against the Ransome employees.

Plaintiff also looks to the Seventh Circuit decision in *Hutter Construction Co. v. Local 139*, 862 F.2d 641 (7th Cir.1988) to justify its argued distinction between a demand for work and for damages. That case does not support plaintiff's attempt to gloss over the representational issues raised in this dispute. The Court initially notes that *Hutter* arises in an entirely different statutory context than the case at bar. It has been true for some time that, under the National Labor Relations Act, certain contract interpretation questions and some related questions (*e.g.* "unfair labor practice" or "jurisdictional" claims), normally reserved for resolution by the National Labor Relations Board, may be resolved in separate forums simultaneously. *See, e.g., Local Union 33*, 289 NLRB No. 167, 129 LRRM 1311, 1314 (1988). Under the RLA, however, there is no such thing as an "unfair labor practice" or a "jurisdictional" claim, and the FEIA does not indicate any valid authority under the RLA for violating the National Mediation Board's exclusive jurisdiction by submitting representational issues, even when such issues are intertwined with contractual claims, to a Board of Adjustment.

Moreover, even if the different statutory schemes were completely analogous, *Hutter* presented a factual and legal situation different from the case at bar. The *Hutter* court was presented with two concluded determinations; an arbitral award of damages to one union under a contract, and a NLRB determination that a different union had a superior "overall" claim to the work, based on "non-contractual" factors. Under the National Labor Relations Act, disputes between two unions over rights to perform work, or "jurisdictional" disputes, fall under the exclusive jurisdiction of the NLRB. In determining that the first claim was not jurisdictional, and therefore properly before the arbitral panel, the *Hutter* court noted that the first union would have had an *independent* contractual claim to damages "even if" it had performed the work itself. *Hutter, supra*, 862 F.2d at 644. This is directly contrary to the present case; FEIA's claim for backpay here rests squarely upon its failure to secure the work in question.

Additionally, the employer in *Hutter* would have avoided its contractual liabilities by recharacterizing the dispute as purely "jurisdictional," and the Seventh Circuit was concerned by that inequitable result. *Id.* It is not apparent that there would be a similar result in the case before this Court. If FEIA's claim for breach of the scope clause of the collective bargaining agreement still exists after the repre-

sentational issue is addressed by the National Mediation Board, a Board of Adjustment can resolve that dispute. Finally, the separate nature of the contractual and jurisdictional issues in *Hutter* led that court to conclude that the awards were not inconsistent, and that the jurisdictional determination was not a necessary prereqliisite to the award of back pay. As indicated in the discussion above, this is not analogous to the situation presented by this case.

FEIA claims that it is not asking the Board of Adjustment to order a change in the work assignment policy of Pan Am Corp., *see* Plaintiff's Memorandum in Support of Summary Judgment at 14, but it is clear that plaintiff *is* asking the Board of Adjustment to determine that *every time* work is assigned in accord with the existing policy, Pan Am Corp. will incur liability to the FEIA. Characterizing the claim as one for only "past" damages does not alter the practical effect on the prospective work assignments. In order to end double payments, it is likely that PAWA will try to terminate the employment of non–FEIA members, or attempt to recognize the union. A representational stake might even be created, if, by an award of damages, Ransome employees felt pressure to unionize. FEIA's semantic manipulations do not alter the fact that FEIA is challenging, in a very real way, the work assignment policy of Pan Am Corp., following its acquisition of Ransome.

The case before the Court may not be a traditional dispute over representation, as the union's complaint is best cast in contract terms. But, as the Court in *IUFA* recognized, Ransome employees can have a "representational stake," regardless of the terms in which the representational issues are couched. This representational stake was said to exist in *IUFA* largely because of the presence of the two factors noted above, namely, the question of the application of previously obtained certification to Ransome employees, and whether two related carriers should be treated as a single carrier for representation purposes. Both

of these factors clearly exist in the present case.

The Court concludes that this case is not distinguishable from the situation presented in *IUFA*. There, as here, the fundamental organizational and representational rights of workers were involved. This conclusion is consistent with the purposes underlying the Railway Labor Act, which was designed explicitly to protect the rights of employees to organize, or not to organize, as they saw fit. That Act designates the National Mediation Board as the body to insure that such rights are secured. *See, e.g.,* 45 U.S.C. §§ 151a(2), (3), and 45 U.S.C. § 152, Fourth. The District Court in *IUFA* acknowledged that the question there was "close," and this case similarly presents a "close" question. The distinctions between that case and this one, however, are not material or significant for these purposes, and do not alter the conclusion that the dispute involves representational issues. The Court will not divert from the *IUFA* decision.

### Conclusion

An issue of representation arises in enforcing the collective bargaining agreement between the FEIA and PAWA. It is settled that a "court may not entertain an action involving ... a [representation] dispute even if it arises in the context of otherwise justiciable claims." *Int. Bros. of Teamsters v. Tex. Int. Airlines, supra,* 717 F.2d at 159. The National Mediation Board has exclusive jurisdiction in such representational disputes, and the jurisdictional scheme of the RLA does not permit the submission of such questions to a Board of Adjustment, on the hope that the resulting resolution will not be inconsistent with employee representation rights. The National Mediation Board can, as it did subsequent to the *IUFA* decision, accept the union's petition for an election to determine whether it might represent the Ransome OTI's.[2] The National Mediation Board can also clarify the "certification" it issued in 1968

---

**2.** In *IUFA* the Circuit Court was satisfied with the subsequent election, in that it underscored the correctness of the District Court's decision

that representation issues within the jurisdiction of the National Mediation Board were implicated. *See, IUFA,* 836 F.2d at 131.

to the FEIA, and determine whether PAWA and Ransome are a "single carrier."

Regardless of what course of action the National Mediation Board takes, it must have the opportunity to define how, and by whom, groups of employees in this airline merger situation are to be represented. Only then may the union and the employer, or their arbitrator, establish or interpret contractual working conditions.

For the foregoing reasons, defendants' motion to dismiss on subject matter jurisdiction grounds is granted, and plaintiff's motion for summary judgment is accordingly denied.

SO ORDERED.